654 So.2d 1073 (1995)
BOARD OF COMMISSIONERS OF the ORLEANS LEVEE DISTRICT
v.
Harry F. CONNICK, as District Attorney for the Parish of Orleans.
No. 94-C-3161.
Supreme Court of Louisiana.
March 9, 1995.
*1074 Ira J. Middleberg, Alan D. Weinberger, Rebecca J. King, Middleberg, Riddle & Gianna; John Wilson Reed, J.E. Smith, Graymond F. Martin, Charles W. Salley, Ira J. Rosenzweig, Hon. William J. Guste, Jr., Lewis O. Unglesby, Arthur A. Lemann, III, for applicant.
William F. Wessel, Mark D. Pethke, Camille B. Tifft, James A. Smith, II, for respondent.
Ellis P. Adams, Jr., for amicus curiae, Louisiana Dist. Attys. Ass'n.
Joseph P. Brantley, IV, for amicus curiae, Louisiana Casino Cruises.
CALOGERO, Chief Justice.[*]
This case arises out of an action for declaratory and injunctive relief filed by the Board of Commissioners for the Orleans Levee District (hereinafter the "Levee Board") against Harry F. Connick, District Attorney for the Parish of Orleans, an action which seeks to prevent Connick from investigating or indicting for criminal violations the operators and/or employees of Showboat Star Casino, which is operating under a riverboat gaming license issued by the Riverboat Gaming Enforcement Division of the Louisiana State Police. See LSA-R.S. 4:501 et seq. ("Louisiana Riverboat Economic Development and Gaming Control Act"). In response to a motion by the Levee Board for a preliminary injunction against Connick, the trial court ruled that LSA-R.S. 14:90(D) represents an unconstitutional intrusion into the constitutionally defined power of the district attorney.[1]See La. Const. Art. V, § 26(B). The trial judge accordingly signed a judgment denying the plaintiff's request for a preliminary injunction, dissolving an extant temporary restraining order, dismissing the defendant's pending exceptions of no right and no cause of action, and declaring LSA-R.S. 14:90(D) unconstitutional.
The Levee Board appealed that decision, invoking this Court's appellate jurisdiction under Article V, § 5(D)(1) of the Louisiana Constitution of 1974. Based upon our review of the record and relevant principles of Louisiana constitutional and statutory law, we vacate the trial court's order that LSA-R.S. 14:90(D) is an unconstitutional exercise of legislative authority. We affirm, however, the trial court's denial of the motion for a preliminary injunction and the trial court's ruling dissolving the temporary restraining order, thus freeing the district attorney to continue his investigation and/or prosecution of this case in criminal district court. Finally, we sustain Connick's exception of no cause of action and accordingly dismiss the plaintiff's lawsuit.

I. Facts and Procedural History
LSA-R.S. 14:90(A) defines the crime of "gambling" as "the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery or contrivance whereby a person risks the loss of anything of value in order to realize a profit." LSA-R.S. 14:90(D) provides, however, that the activities otherwise barred by LSA-R.S. 14:90(A) do not constitute the crime of "gambling" and "shall not be suppressed by any state or local law enforcement officer" if they are conducted "upon a riverboat as defined and authorized in R.S. 4:501 through R.S. 4:562." The latter statutory sections include LSA-R.S. 4:525(B)(1)(a), which maintains that, subject to certain limited exceptions, *1075 "no gaming may be conducted while a riverboat is docked."
On November 18, 1994, District Attorney Connick contacted, among others, the owners of the Showboat Star Casino and informed them that he believed their practice of conducting gaming activities while not cruising violated LSA-R.S. 4:525(B)(1)(a)'s conditional prohibition of dockside gambling. Connick asserted that this violation removed the casino operators from the protective scope of LSA-R.S. 14:90(D), and that those operators therefore could face prosecution for gambling activities under LSA-R.S. 14:90(A). On December 8, 1994, the Orleans Parish grand jury opened an investigation into possible state criminal violations stemming from the operation of the Showboat Star Casino, located at South Shore Harbor on Lake Pontchartrain in New Orleans.
On December 16, 1994, the Levee Board filed a lawsuit against Connick in the Civil District Court for declaratory and injunctive relief.[2] In its petition the Levee Board prayed for the immediate issuance of a temporary restraining order, to be followed by a preliminary injunction, and ultimately a judgment declaring that Connick has no power "to indict or promote the indictment or prosecute or promote the prosecution" of any person operating under a license "to conduct gaming activities on a riverboat."[3]
The Civil District Court, through the duty judge, issued a temporary restraining order prohibiting Connick "from indicting or urging the indictment" of "any officer or employee of the Showboat Star Partnership for any violation of La.R.S. 14:90" as long as that person is under the authority of a valid riverboat gaming license. In his reasons for judgment, the duty judge concluded that "the Legislature intended to vest the gaming enforcement division with exclusive jurisdiction to enforce" the Riverboat Gaming Control Act. The duty judge went on to note that "[i]f, as the District Attorney suggests, local authorities are allowed to prosecute because they believe the failure to sail is culpable, the statute would be effectively neutered."
Connick responded to this ruling with a motion to dissolve the temporary restraining order. He also filed exceptions of no right and no cause of action, claiming that the Levee Board lacks any standing to bring its action (and thus enjoyed no right of action) and additionally that its petition sets forth no cause of action. On December 20, 1994, the trial court conducted a hearing on the Levee Board's motion for a preliminary injunction, Connick's motion to dissolve the temporary restraining order, and the latter's peremptory exceptions of no right and no cause of action.
On December 21, 1994, the trial court issued a judgment in which it declared LSA-R.S. 14:90(D) to be an unconstitutional exercise of legislative power because it "seeks to limit the power of the District Attorney in the area of riverboat gambling." The trial court found this to be an infringement of the broad discretion accorded prosecutors in the investigation and prosecution of violations of state criminal statutes under Article V, § 26(B) of the Louisiana Constitution of 1974.[4] The trial judge raised the question of the statute's constitutionality on her own motion; it was not raised or argued by either party in any pleading or at any hearing.
Based upon this finding of constitutional infirmity, the trial court dissolved the temporary restraining order and denied the Levee Board's motion for a preliminary injunction. The trial judge also ordered the defendant's exceptions of no right and no cause of action dismissed, presumably finding it unnecessary to reach the merits of these exceptions in *1076 light of its finding that LSA-R.S. 14:90(D), which the plaintiff claimed exempted licensed riverboat gaming operators from LSA-R.S. 14:90(A)'s gambling prohibition, was unconstitutional.
The Levee Board appealed that decision to this Court. In addition, an association of riverboat gaming interests ("the Association"),[5] with an avowed interest in these proceedings, has appealed the decision as well. See LSA-C.C.P. Art. 2086. We denied the Levee Board's motion, filed in conjunction with this appeal, for an order to stay the district attorney's grand jury investigation regarding the Star Casino. Board of Comm'nrs of the Orleans Levee District v. Connick, 94-CD-3121, 648 So.2d 907 (La. 1995). However, we did stay the effect of the Civil District Court's order in the case insofar as it declared LSA-R.S. 14:90(D) unconstitutional, pending disposition of this appeal. Board of Comm'nrs of the Orleans Levee District v. Connick, 94-CD-3129, 648 So.2d 907 (La.1995).
We now entertain this case under Article V, § 5(D)(1) of the Louisiana Constitution of 1974 which provides this Court with appellate jurisdiction over all cases in which "a law or ordinance has been declared unconstitutional." In addition, we consider all other issues ruled upon by the trial court pursuant to Article V, § (5)(F), which grants this Court "appellate jurisdiction over all issues involved in a civil action properly before it." See Church Point Wholesale Beverage v. Tarver, 614 So.2d 697, 700 (La.1993).

II. The Trial Court's Ruling that LSA-R.S. 14:90(D) is Unconstitutional
As earlier indicated, no party to this proceeding, either in the Civil District Court below or in this Court, has challenged the constitutionality of LSA-R.S. 14:90(D). Rather, the trial court raised the issue of the statute's constitutionality on its own motion. Given the facts and legal issues presented in this particular case, the trial court erred in doing so.
As a general rule, courts should not reach the question of a statute's constitutionality when its unconstitutionality has not been placed at issue by one of the litigants. See Vallo v. Gayle Oil Co. Inc., et al, 94-CA-1238, 646 So.2d 859 (La.1994). Unless a statute as drawn is clearly unconstitutional on its face, it is preferred that the parties to a dispute uncover any constitutional defects in a statute through the dialectic of our adversarial system; for a court sua sponte to declare a statute unconstitutional is a derogation of the strong presumption of constitutionality accorded legislative enactments. See State v. Cinel, 94-KA-0942, 646 So.2d 309, 313 (La.1994) (citations omitted) ("[w]henever it is possible, [Louisiana] courts have the duty to interpret statutes in a manner consistent with" our state and federal constitutions).
Courts should both respect legislative enactments and at the same time seek to provide substantial remedies to wrongly aggrieved persons; a balancing of these often competing directives leads us to the formulation of this general rule: "a judge should not judicially declare a statute unconstitutional until the question of constitutionality is tendered for decision [or] unless it must be decided in order to determine the right of a party litigant." State v. Watkins, 176 La. 837, 147 So. 8 (1993). See also Diaz v. Allstate, 433 So.2d 699, 702 (La.1983) ("a court should not pass on the constitutionality of legislation unless it is essential to the decision of a case or controversy").
In this case, the trial judge appears to have found the statute unconstitutional based upon her reading of it as divesting the district attorney of a portion of his constitutionally conferred prosecutorial power. Such a reading is a strained interpretation of LSA-R.S. 14:90(D); the provision is clearly *1077 definitional in nature, intended to provide an exception for the general prohibition on "gambling" found in LSA-R.S. 14:90(A). As such it is not remarkably different from a number of such exceptions which abound in our criminal code, and nothing about its language or placement supports the proposition that its application impairs the district attorney's prosecutorial authority. Because we conclude that a consideration of LSA-R.S. 14:90(D)'s constitutionality was not required for the trial court to properly dispose of the issues before it, we vacate the trial court's order declaring the statute unconstitutional.

III. The Trial Court's Ruling Denying the Levee Board a Preliminary Injunction and Dismissing Connick's Peremptory Exception of No Cause of Action
In this case the true threat to the constitutional power of the district attorney arises not from any influence exerted by LSA-R.S. 14:90(D), but instead from the prospect of the district attorney's authority to investigate and prosecute state criminal offenses being curtailed by an injunction issued by the Civil District Court for the Parish of Orleans. We find that the Levee Board's petition fails to allege the extraordinary circumstances required to justify the granting of such relief, and the record is similarly devoid of any evidence indicating the existence of such circumstances. Therefore, for the reasons discussed infra we affirm the trial court's ruling dissolving the temporary restraining order and denying the Levee Board a preliminary injunction.
Our jurisprudence admits of only a limited number of instances in which a state criminal prosecution may be enjoined prior to the institution of criminal proceedings in a court exercising criminal jurisdiction, i.e. prior to the filing of a misdemeanor affidavit or bill of information by the district attorney or the issuance of an indictment by a legally constituted grand jury. See La. Const. Art. I, § 15; LSA-C.Cr.P. Art. 382. These limitations upon the power of a court exercising civil jurisdiction arise from a respect for the constitutional prerogative of the district attorney, as well as an appreciation of the different purposes served by a trial court's exercise of civil, as opposed to criminal, jurisdiction.
Article V, § 26 of the Louisiana Constitution of 1974 provides the district attorney with broad and sweeping powers as part and parcel of his role as the state's prosecuting attorney. "A district attorney is a constitutional officer who serves in the judicial branch and exercises a portion of the sovereign power of the state within the district of his office." Diaz, supra, 433 So.2d at 701. "The district attorney has entire charge and control of every criminal prosecution instituted or pending in his district and determines whom, when and how he shall prosecute." State v. Perez, 464 So.2d 737, 744 (La.1985). Furthermore, "there is no provision of law that defines or limits the type of cases a district attorney may prosecute." Id. See also State v. Sykes, 364 So.2d 1293, 1297 (La.1978). Finally, the jurisdiction of the district attorney to prosecute those who violate state criminal statutes is exclusive; it can only be constrained or curtailed when it operates to the prejudice of a contrary constitutional mandate, and even then only with due deference to the district attorney's constitutional prerogative. City of Baton Rouge v. Short, 345 So.2d 37, 40 (La.1977).
We have in the past recognized only two particular scenarios in which the egregiousness of the threat to constitutionally protected interests warrants the staying of a district attorney's investigation prior to the initiation of prosecution in a court of criminal jurisdiction. The first of these is presented by a case where the district attorney is attempting to prosecute a prospective defendant under a statute which is "manifestly unconstitutional." Knights of Columbus v. Louisiana DPS, 548 So.2d 936, 938 (La.1989) (citing cases).[6] A statute (or ordinance) is *1078 "manifestly unconstitutional" when it is invalid on its face, e.g. when the statute is unconstitutionally vague or overbroad. The drastic remedy of injunctive relief to restrain enforcement of such a statute is necessary because such a statute by its very existence threatens to "chill" the citizenry's exercise of constitutionally protected speech and assembly. See Plaquemines Parish Comm'n Council v. Perez, 379 So.2d 1373, 1384-1385 (La.1980), citing Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Outside of the narrow context of "manifestly unconstitutional" statutes,[7] however, "[t]he proper forum for testing the constitutionality of the statute is by a motion to quash in a criminal prosecution if and when that occasion arises." LaBauve v. Louisiana Wildlife and Fisheries Comm'n, 289 So.2d 150, 153 (La.1974).
The second situation in which we have approved a civil court's enjoining a district attorney's investigation arises when the district attorney abuses the powers of his office by subjecting an individual to a harassing investigation without any good faith belief that the individual has committed any crime. Compare In re Grand Jury Subpoenas Issued to Certain Members of Orleans Levee District, 95-KK-0042, 648 So.2d 864 (La. 1995) (per curiam). The issuance of an injunction is warranted in such cases because "there [is] a federal right to be free of a bad faith prosecution."[8]Perez, supra, 379 So.2d at 1385 (footnote omitted), discussing Shaw v. Garrison, 467 F.2d 113 (5th Cir.1972), cert denied, 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972). A plaintiff who seeks to enjoin such "bad faith" investigations must show, at a minimum, that he is threatened with an investigation which is "unnecessarily abusive, harassing or illegal, and without any possibility of ultimate indictment supported by probable cause for prosecution." Perez, supra, 379 So.2d at 1385.[9]
*1079 In the absence of one of these threshold showings,[10] however, a court exercising civil jurisdiction cannot restrain the district attorney from the exercise of his constitutional powers. Nothing in the Levee Board's petition or any other of the pleadings filed below suggests such a threshold showing has even been attempted in this case, much less made. For this reason, we affirm the trial court's dissolution of the temporary restraining order as improvidently granted, and affirm as well the trial court's decision denying the Levee Board a preliminary injunction.
The Levee Board and the Association have argued strenuously, both in brief and orally before this Court, that the district attorney is attempting to prosecute the operators of the Showboat Star Casino for conduct that the Legislature, by virtue of its general power to define crimes and its specific mandate to "define and suppress" gambling, has exempted from the definition of criminal "gambling." Compare LSA-R.S. 14:90(A), (D). In other words, the appellants complain that the district attorney has no authority to investigate and prosecute the casino operators because his constitutional authority only extends to the investigation and prosecution of conduct which is criminal, and not to an activity which the legislature has specifically "authorized."[11] The appellants contend that to allow the district attorney's investigation and/or prosecution to continue undermines the Legislature's authority to prescribe what conduct is criminal by allowing the district attorney the discretion to ascertain the criminality vel non of the casino operator's activities.
The appellants' argument is in this respect premature. The dispositive question at this juncture of the proceedings is not whether dockside gambling is a criminal offense under LSA-R.S. 14:90(A), but rather which is the proper judicial forum and the applicable procedural regime for answering that question. The appellants are incorrect insofar as they frame the question in terms of the tension between the constitutional authority of the Legislature and the district attorney, since as a constitutional matter the ultimate determination of whether a given course of conduct invites a legislatively imposed penal sanction is a role assigned to courts and petit juries, not the Legislature.
The Legislature's role in this instance is normative; the structure of our criminal justice system, where not dictated by constitutional considerations, is established by legislative enactment. Further, although the Legislature may mold the variety of prohibitions, procedures, and punishments which guide courts and juries in their duties, it is the distinct and varied facts of each individual case which determine the ultimate result in a given prosecution. Facts in our system of criminal justice do not exist a priori, but are found to exist after consideration of proper evidence adduced before a fair and impartial tribunal. The particular interest which the sovereign has in pursuing criminal justice dictates that those facts be presented and *1080 this case resolved according to the procedures which the Legislature has determined should apply in criminal matters.
In granting the temporary restraining order below, the duty judge of the civil district court noted that "[a] civil court is by far a more effective arena in which to wage this contest than would be a criminal prosecution." Such reasoning fails to appreciate the fundamental difference between criminal and civil matters. A trial court exercising its civil jurisdiction offers the prospect of the sovereign as referee, and the "looser" and more flexible civil procedural rules reflect that role insofar as they place great discretion and latitude of action in the hands of the respective parties. See Albert Venn Dicey & J.H.C. Morris, The Conflict of Laws, P. 77 (9th ed. 1973). This is so even when one of the parties is the sovereign acting in its proprietary role or haled into court because of a waiver of sovereign immunity.[12]
A crime, as opposed to any manner of civil offense, is a direct affront to the sovereign;[13] the sovereign qua sovereign is therefore a party to such suits in its role as prosecutor. See LSA-C.Cr.P. Art. 381; Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); Ledwith v. Douglas, 568 F.2d 117 (1978); Commonwealth v. Shelley, 374 Mass. 466, 373 N.E.2d 951 (1978). Because the sovereign has a direct interest in the initiation and resolution of a criminal proceeding, the rules of procedure applicable to it differ considerably from those applicable to a civil action. See United States v. Baptista-Rodriguez, 17 F.3d 1354 (11th Cir. 1994); State v. McNab, 642 So.2d 41, 42 (Fla.App.1994). See also 1 Sir James Fitzjames Stephen, A History of the Criminal Law of England, P. 5 (1883). In addition, because a criminal action offers the prospect of a citizen opposed by the vast and impersonal resources of the state, constitutional protections come to the fore in the criminal context, sculpting the applicable substantive and procedural mechanisms far more comprehensively than in a civil setting. In short, when it addresses a criminal cause the sovereign is not concerned with providing an "effective arena" for two relatively equal litigants to match wits; rather, it is concerned with providing an effective way of vindicating its interest in promoting criminal justice while respecting the "fundamental fairness" that due process and related constitutional guarantees ensure colors the exercise of criminal jurisdiction. See Heath v. Alabama, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); United States v. Flores, 289 U.S. 137, 53 S.Ct. 580, 77 L.Ed. 1086 (1933); Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892).
Under the Louisiana constitution it is the district attorney who is charged with the duty of seeking out potential criminals and bringing them to trial for their alleged wrongs. Where the constitution is silent, the Legislature defines the procedures to be followed in such trials when it sets forth the parameters of a trial court's criminal jurisdiction. See LSA-C.Cr.P. Art. 15. The constitutional role of the district attorney is incipient to the criminal process; his decision to file charges in a court of criminal jurisdiction is the event which incites a trial court's exercise of that jurisdiction. An injunction granted by a civil court halting a district attorney's investigation and preventing the filing of criminal charges therefore impairs not only the district attorney's constitutional prerogative, but also undercuts the Legislature's determination that certain issues of direct interest to the sovereign be resolved according *1081 to a certain set of procedural rules in a specified forum.
"No person is immune from prosecution in good faith for his alleged criminal acts." Douglas v. City of Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943). "Nor is any person immune from a criminal investigation." Perez, supra, 379 So.2d at 1386. If the district attorney is incorrect in his appreciation of the criminality of a given defendant's course of conduct, the remedy is a fair trial or any of the pretrial remedies, such as a motion to quash, afforded by our Code of Criminal Procedure. Id. The district attorney, as long as he is not flagrantly violating the constitution by doing so, has the right and the duty to ferret out wrongdoers wherever he perceives them to be lurking, and then to bring them before a tribunal exercising criminal jurisdiction so that their guilt or innocence may be determined from the facts and the law adduced in that forum. A preliminary injunction in this case, on the showing made below, would deny that right and undermine that duty. Therefore we affirm the trial court's denial of such relief.
Furthermore, the same principles which militate against the issuance of the preliminary injunction also instruct us that the declaratory judgment action below should not be maintained. The root of our holding today is that a criminal prosecution may be preempted by recourse to civil relief only in exceptional circumstancesthose of constitutional significancewhich the appellants here have failed to demonstrate. This determination is a result of the balancing of the plaintiff's interest in obtaining civil relief against the district attorney's right to investigate and prosecute state crimes, a balancing which is weighted towards the district attorney because of the singular interest of the sovereign in criminal matters and the way in which that interest is vindicated in the criminal justice system.
The lawsuit for a declaratory judgment filed by the Levee Board is an attempt to bypass this system by obtaining a preliminary judicial determination of lack of criminal culpability in a forum which is not intended nor designed for the resolution of criminal matters, i.e. it is an attempt to bypass the criminal justice process. However, the Levee Board has failed to demonstrate any of the extraordinary and overriding constitutional concerns which might permit such a circumvention of this process. Thus, for the same reasons posited in the preceding subsection of this opinion, we conclude that the Levee Board's petition fails to state a cause of action sufficient to maintain a declaratory judgment action seeking a preliminary determination of the merits of a prospective criminal prosecution.[14]
In accordance with this finding, we reverse the trial court's dismissal of Connick's exception of no cause of action and, finding that it has merit, sustain it. Furthermore, based upon the record before us we find that there is no need to remand this case to the district court, and therefore dismiss the plaintiffs' lawsuit. See LSA-C.C.P. Art. 934.
As a result of this judgment, District Attorney Connick is free to proceed, in good faith, with his investigation and/or prosecution of violations of state criminal statutes pursuant to his authority under the Louisiana Constitution of 1974. We also observe that in this opinion we have had no occasion to pass upon the nature or the scope of the exemption from criminal culpability for "gambling" provided by LSA-R.S. 14:90(D). Rather, we conclude that, given the showing made by the Levee Board in the record before us, an interpretation of this criminal statute should be made in a district court exercising its original jurisdiction over criminal prosecutions.
Accordingly, we vacate the trial court's order finding LSA-R.S. 14:90(D) unconstitutional, as the order was entered upon the court's own motion when no party litigant raised the issue and it was not necessary for a determination of the rights of any party. We affirm the trial court's denial of the injunctive relief sought by the Levee Board *1082 since the Board has failed to make a showing of exceptional circumstances which warrant the issuance thereof. For the same reason, we reverse the trial court's judgment dismissing the defendant's exception of no cause of action and, finding that the exception has merit, sustain it and dismiss the plaintiff's lawsuit. The district attorney is free to continue his investigation and/or prosecution into allegedly illegal gambling activities which the plaintiff in this case has attempted to enjoin.

DISTRICT COURT'S ORDER DECLARING LSA-R.S. 14:90(D) UNCONSTITUTIONAL VACATED; JUDGMENT DENYING PLAINTIFF INJUNCTIVE RELIEF AFFIRMED; EXCEPTION OF NO CAUSE OF ACTION SUSTAINED, AND CASE DISMISSED.
JOHNSON, J., concurs in part, dissents in part and will assign reasons.
NOTES
[*] Judge Charles R. Lindsay, Court of Appeal, Second Circuit, sitting by assignment in place of Justice James L. Dennis. Pursuant to Rule IV, Part 2, § 3, Justice Catherine D. Kimball was not on the panel that heard and decided this case. See State v. Barras, 615 So.2d 285, 286 n. 1 (1993).
[1] The portions of LSA-R.S. 14:90 pertinent to this opinion read as follows:

§ 90. Gambling
A. (1)(a) Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery or contrivance whereby a person risks the loss of anything of value in order to realize a profit.
D. The intentional conducting or assisting in the conducting of gaming activities upon a riverboat as defined and authorized in R.S. 4:501 through R.S. 4:562, whereby a person risks the loss of anything of value in order to realize a profit is not gambling and shall not be suppressed by any state or local law enforcement officer.
[2] The Levee Board has leased to the Star Casino a portion of its harbor space; the Board allegedly receives as much as 30% of its current operating revenue from this lease arrangement.
[3] Such licenses are issued by the Gaming Enforcement Division according to the provisions of the Riverboat Gaming Control Act. See LSA-R.S. 4:525(A).
[4] This provision reads as follows:

(B) Powers. Except as otherwise provided by this Constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury. He shall perform other duties provided by law.
[5] The "Association" includes American Entertainment, L.L.C.; Crescent City Capital Development Corporation; Grand Palais Riverboat, Inc.; Horseshoe Entertainment, a Louisiana Limited Partnership; Louisiana Casino Cruises, Inc.; Louisiana Riverboat Gaming Partnership; Louisiana-I Gaming, a Louisiana Partnership in Commendam; Players Lake Charles, Inc.; Queen of New Orleans at the Hilton Joint Venture; St. Charles Gaming Company, Inc.; Showboat Star Partnership; Treasure Chest Casino, Inc.; and The Riverboat Casino Association of Louisiana.
[6] Even if such a threshold showing is made, in the case of a "manifestly unconstitutional" statute a plaintiff must additionally show a threat of irreparable injury and that existing property rights will be destroyed by the statute's enforcement before an injunction may lawfully issue. Knights of Columbus, 548 So.2d at 938 (citing cases). We note that in Dumestre v. Police Jury, Parish of Jefferson, 195 La. 492, 197 So. 209 (1940), this Court granted a plaintiff injunctive relief against the enforcement of a municipal ordinance by the district attorney which endangered significant property interests of that plaintiff without either a showing of "manifest unconstitutionality" or the "bad faith" of the district attorney. Dumestre is inapposite for two reasons. First, it did not address directly the question of the broad powers constitutionally granted to the district attorney, powers which we have recognized were expanded even further by the Constitution of 1974. See State v. Neyrey, 341 So.2d 319, 323-324 (La.1976) (on rehearing). Second, Dumestre involved a prosecution under a municipal ordinance, not a "state" criminal offense, i.e. a crime designated as such by the Legislature. The district attorney's constitutional power extends over the investigation and prosecution of all "state" offenses; if and when a district attorney prosecutes offenses created by a political subdivision, e.g. an ordinance enacted by a municipality's legislative arm, the exercise of his prosecutorial discretion simply does not possess the same constitutional dimension that it does when he is prosecuting under a state criminal statute.
[7] Even when such a statute exists, the appropriate remedy is merely to enjoin the enforcement of that statute. The issuance of a general injunction restraining the district attorney from proceeding in an investigation which might discover conduct proscribed by other, valid, state criminal statutes is far too broad, and presents far too significant an intrusion into the district attorney's constitutional prerogative.
[8] In Perez, supra, 379 So.2d at 1385 (emphasis added), we discussed the parameters of this prosecutorial "bad faith:"

In denying an injunction against threatened arrest in Holmes v. Giarrusso, 319 F.Supp. 832 (E.D.La.1970), because of the absence of a showing that the arrest would be made in bad faith, the court defined a bad faith arrest as one made with no expectation of conviction but merely to discourage the exercise of protected rights. Similarly, in Scott v. Frey, 330 F.Supp. 365 (E.D.La.1971), the court found that federal injunctive relief against threatened prosecution was available only upon a showing of irreparable injury based on bad faith prosecution or proven harassment.
* * * *
The petition alleges that the district attorney's investigatory activities are motivated by personal animosity and by a personal desire to protect his own financial motives. Such bad motives are a part, but are not sufficient to constitute, by themselves, the kind of "bad faith" which would overcome the force of the strong public interest in identifying and prosecuting wrongdoers.
[9] In Perez, supra, 379 So.2d at 1378, we also noted that moving to recuse the district attorney, a procedure which is both statutorily and constitutionally provided for, is an alternative and perhaps more appropriate remedy in cases where the personal vindictiveness of the district attorney is the motivating force behind a "bad faith" investigation and/or prosecution. See LSA-C.Cr.P. Art. 680.
[10] We do not wish to say that a showing of "manifest unconstitutionality" or "bad faith" as defined supra are the exclusive grounds upon which a civil court may limit a district attorney's investigation. An investigation which directly treads upon constitutionally protected interests, e.g. an investigation which unjustifiably targets a "suspect class," might well warrant such judicial intervention at the investigatory stage. See State v. Coleman, 465 So.2d 709, 711 (La.1985), citing Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). To this point, however, our jurisprudence marks only the two situations noted above as demonstrating the grave urgency needed to condone the derailing of the criminal justice process by means of civil injunction.
[11] We note that we do not in this opinion pass upon the merits of the appellants' claim that licensed riverboat gambling is "authorized" and therefore falls within the exemption from criminal culpability for "gambling" created by LSA-R.S. 14:90(D). The appropriate forum in which to litigate that issue, including the related issue of the extent to which, if at all, the civil regulations found within the Riverboat Gaming Act interact or interrelate with the exemption provided for under LSA-R.S. 14:90(D), is a district court exercising its exclusive criminal jurisdiction over felony prosecutions. See LSA-C.Cr.P. Art. 479, 531. Insofar as the appellants' argument may be read to urge a legislative divesting of the district attorney's authority, or even the creation of a concurrent authority in the Gaming Division to prosecute under state criminal statutes, we consider that argument meritless under the jurisprudence discussed supra. See Short, supra, 345 So.2d at 40 (district attorney's control over all state prosecutions in his district is exclusive).
[12] We note at this juncture that because of our disposition of this case we do not here address the district attorney's argument that he enjoys sovereign immunity against a declaratory judgement action. See La. Const. Art. XII, § 10; Chamberlain v. State Through DOTD, 624 So.2d 874 (La.1993).
[13] This fundamental principle is mirrored in the conflict of laws principle that whereas a civil cause of action is "transitory," and thus may be brought in any state where personal jurisdiction over the defendant lies, the prosecution of criminal matters is purely a "local" concern. "This is based upon the idea that the crime is an offense against the sovereignty and good order of the State within whose jurisdiction it occurs, and that each State must attend to the vindication of its own sovereignty." Raleigh C. Minor, Conflict of Laws, § 204, P. 498 (1901). See also Conflict of Laws, §§ 620, 621 (8th ed. 1883) (citation omitted).
[14] For this reason, we have no need to address Connick's exception of no right of action, which challenges the standing of the Levee District to maintain such an action. See American Waste v. St. Martin Parish, 627 So.2d 158, 162 (La.1993) (citation omitted); Church Point Wholesale Beverage v. Tarver, 614 So.2d 697, 701 (La.1993).