HUGHES, J.
 

 lüThis is an appeal from the denial of injunctive and declaratory relief sought by the Louisiana Board of Nursing (“Nursing Board”) to compel the production of records by the East Baton Rouge Parish Sheriff (“Sheriff”) and the District Attorney for the Nineteenth Judicial District (“D.A.”). For the following reasons, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 On April 10, 2009 a nurse working at a Baton Rouge area hospital allegedly sexually assaulted a patient. The Sheriff and the D.A. began an investigation. The Nursing Board suspended the nurse’s li
 
 *810
 
 cense on an emergency basis, and in preparation for a hearing on the matter (as mandated by La. Admin. Code, Title 46, Part XLVII, § 3411(H)
 
 [1]
 
 ), issued subpoenas to both the Sheriff and the D.A. for “the arrest report, along with any/all associated narrative reports, and the like” pertaining to the arrest of the nurse at issue. Although the Sheriffs initial arrest report was provided to the Nursing Board, the Sheriff and the D.A. declined to turn over any further records, contending such records pertained to a pending criminal proceeding and were therefore not “public records” subject to disclosure under Louisiana’s public records law (LSA-R.S. 44:1 et seq.).
 

 On May 22, 2009 the Nursing Board filed the instant suit against the Sheriff and the D.A., citing its subpoena power as granted by LSA-R.S. 37:918 and LSA-R.S. 49:956, and seeking a writ of attachment or injunctive relief compelling production of the records sought, as well as a declaratory judgment that LSA-R.S. 44:3 provides no privilege in favor of the ^defendants exempting the production of the records. In response to the suit, both the Sheriff and the D.A. filed answers, denying the Nursing Board’s entitlement to the relief sought, along with motions to quash the Nursing Board’s subpoenas. The Sheriff further sought, in the alternative, a protective order precluding the production of the requested documents. The D.A. also sought injunctive relief to stay the Nursing Board proceedings, and further argued that its constitutionally mandated responsibility, regarding criminal prosecutions in its district (as provided in LSA-Const. Art. V, § 26), should take precedence over the statutory subpoena power granted to the Nursing Board.
 

 Following a hearing on June 3, 2009, the district court ruled that while LSA-R.S. 44:3 does not create a privilege, it does “embod[y] an important public policy designed to preserve the integrity of an ongoing criminal investigation, and to prevent the disclosure of any criminal investigative files, including files sought by subpoena or through other court-sanctioned process.” The district court ruled that such a privilege has been judicially created (citing
 
 Conella v. Johnson,
 
 345 So.2d 498 (La.1977), and
 
 Freeman v. Guaranty Broadcasting Corp.,
 
 498 So.2d 218 (La. App. 1 Cir.1986)). Further, the district court rejected the Nursing Board’s contention that its statutory subpoena power extended to law enforcement investigatory files (citing language contained in LSA-R.S. 37:921-922). In conjunction with its rulings, the district court signed a judgment on June 22, 2009, denying the Nursing Board’s request for injunctive and declaratory relief, granting the motions to quash the Nursing Board’s subpoenas issued to the Sheriff and the D.A., and denying the D.A.’s request for a stay of the Nursing Board’s proceedings.
 

 The Nursing Board has appealed this judgment, asserting that the 14district court committed legal error in: (1) interpreting LSA-R.S. 44:3 as creating a privilege over the records of law enforcement officials that may withstand a lawful subpoena; (2) misinterpreting the Nurse Practice Act (LSA-R.S. 37:911 et seq.) as imposing a restriction on the Nursing Board’s ability to investigate and discipline its licensees for criminal conduct; and (3)
 
 *811
 
 ruling that the Nursing Board was not entitled to injunctive relief on the basis that no showing of irreparable harm, loss, or damage had been made. On appeal, the Sheriff and D.A. have filed a joint motion to dismiss the appeal on the basis of mootness, asserting that the Nursing Board hearing for which the subpoenas at issue were issued has already occurred and that the allegedly abusive nurse’s license has been revoked. In the alternative, the Sheriff and D.A. seek to have the appellate record supplemented with the Nursing Board decision that revoked the referenced nurse’s license.
 

 DISCUSSION
 

 Motion to Dismiss for Mootness
 

 It is well settled that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to controversies. Cases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely. A “justiciable controversy” is one presenting an existing actual and substantial dispute involving the legal relations of parties who have real adverse interests and upon whom the judgment of the court may effectively operate through a decree of conclusive character. A “justiciable controversy” is thus distinguished from one that is hypothetical or abstract, academic, or moot.
 
 City of Hammond v. Parish of Tangipahoa,
 
 2007-0574, pp. 6-7 (La.App. 1 Cir. 3/26/08), 985 So.2d 171, 178 (citing
 
 St. Charles Gaming Company v. Riverboat Gaming Commission,
 
 94-2679, p. 6 (La.1/17/95), 648 So.2d 1310, 1315, and
 
 St. Charles Parish School Board v. GAP Corporation,
 
 512 So.2d 1165, 1170-71 (La.1987) (on rehearing)).
 

 An issue is moot when a judgment or decree on that issue has been “deprived of practical significance” or “made abstract or purely academic.” Thus, a case is moot when a rendered judgment or decree can' serve no useful purpose and give no practical relief or effect. If the case is moot, there is no subject matter on which the judgment of the court can operate. That is, jurisdiction, once established, may ábate if the case becomes moot. The .controversy must normally exist at every stage of the proceeding, including appellate stages.
 
 City of Hammond v. Parish of Tangipahoa,
 
 2007-0574 at p. 7, 985 So.2d at 178 (citing
 
 Cat’s Meow, Inc. v. City of New Orleans Through Department of Finance,
 
 98-0601, pp. 8-9 (La.10/20/98), 720 So.2d 1186, 1193).
 

 A case may become moot for several reasons, including: because the law has changed; because a defendant has paid funds owed and no longer wishes to appeal (notwithstanding the plaintiffs desire to obtain a higher court ruling); because allegedly wrongful behavior has passed and can not reasonably be expected to recur; because a party can no longer be affected by a challenged statute (for example, a law regulating rights of a minor, who, as a party and through the lapse of time, is no longer within the age bracket governed by the statute); or, because a party has died.
 
 Id.
 

 Even though the requirements of justiciability are satisfied when the suit is initially filed, when the fulfillment of these requirements lapses at some point during the course of litigation before the moment of final disposition, mootness occurs. In such a case, there may no longer be an actual controversy for the court to address, and any judicial pronouncement on the . matter would be an impermissible advisory opinion.
 
 See City of Hammond v. Parish of Tangipahoa,
 
 2007-0574 at pp. 7-8, 985 So.2d at 178 (citing
 
 Cat’s Meow, Inc. v. City of New Orleans Through De
 
 
 *812
 

 partment of Finance,
 
 98-0601 at p. 9, 720 So.2d at 1193-94). A court must refuse to entertain an action for a declaration of rights if the issue presented is academic, theoretical, or based on a contingency that may or may not arise.
 
 American Waste & Pollution Control Company v. St. Martin Parish Police Jury,
 
 627 So.2d 158, 162 (La.1993). Nor is a court required to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law that cannot affect the result as to the thing in issue in the case before it.
 
 Council of City of New Orleans v. Sewerage and Water Board of New Orleans,
 
 2006-1989, p. 5 (La.4/11/07), 953 So.2d 798, 802 (quoting
 
 St. Charles Parish School Board v. GAF Corporation,
 
 512 So.2d at 1173).
 

 However, exceptions to the mootness doctrine have been recognized. In particular, and as applicable to the instant case, a court should consider whether there is any reasonable expectation that the complained-of conduct will recur.
 
 See Cat’s Meow, Inc. v. City of New Orleans Through Department of Finance,
 
 98-0601 at pp. 9-13, 720 So.2d at 1194-96. A finding of mootness is precluded when: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.
 
 In re Grand Jury,
 
 98-2277, p. 11 (La.4/13/99), 737 So.2d 1, 11.
 

 In the instant case, the Nursing Board makes a compelling argument, and we are persuaded, that the facts of this case warrant an exception to the general rule of mootness. Although the Nursing Board has failed to admit that it has already conducted the revocation hearing for which the documents subpoenaed were sought and that the license of the nurse in question has been revoked, in accordance with LSA-C.E. art. 202(B)(1)(e)
 
 [2]
 
 and as requested by the defendants/appellees, we take judicial notice of the fact that the license of the nurse at issue was “permanently revoked” by the Nursing Board following its September 14-16, 2009 board meeting.
 
 [3]
 

 Because all of the events at issue took place within a five-month period of time,
 
 [4]
 
 
 *813
 
 this is a matter that is “capable of repetition, yet evading review,” and for that reason can be considered by this court though technically moot.
 
 See Kirk v. State,
 
 526 So.2d 223, 226 n. 2 (La.1988).
 
 See also Nebraska Press Association v. Stuart,
 
 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976). Therefore, we deny the motion to dismiss this appeal.
 

 We further find no merit in the defendants/appellees’ law-of-the-case argument, asserting that this court should refuse to consider this matter on appeal after having previously denied the Nursing Board relief on its application for supervisory review. However, upon review of the Nursing IsBoard’s writ application and this court’s decision to deny that application, we conclude that the merits were not addressed therein; it appears the writ application was denied because the Nursing Board’s motion for appeal had been granted and a more thorough review of the issues presented could be obtained on appeal.
 
 Louisiana State Board of Nursing v. Gautreaux,
 
 2009-1403 (La.App. 1 Cir. 8/31/09). While, under the law-of-the-case doctrine, an appellate court generally will not, on a subsequent appeal, reconsider its earlier ruling in the same case, this discretionary doctrine only applies to parties and issues that were actually presented and decided by the appellate court.
 
 East Baton Rouge Parish School Board v. Wilson,
 
 2008-0536, p. 9 (La.App. 1 Cir. 6/6/08), 992 So.2d 537, 543,
 
 writ denied,
 
 2008-1479 (La.12/12/08), 997 So.2d 560. Since the Nursing Board’s earlier writ application was denied on a procedural basis, the law-of-the-case doctrine has no relevance herein.
 

 Having taken judicial notice of the Nursing Board ruling revoking the nursing license at issue, we find it unnecessary to grant the defendants/appellees’ motion to supplement the appellate record with a copy of the decision. The motion to supplement the record is therefore denied.
 

 Subpoena Power of the Nursing Board
 

 The Nursing Board is empowered by LSA-R.S. 37:921 et seq. to: deny, revoke, suspend, probate, limit or otherwise restrict licenses of individuals who violate the nursing laws; provide procedure. and conduct hearings for the discipline of individuals as needed and establish alternatives to the disciplinary process when considered appropriate by the board; and cause the prosecution of all persons violating any provision of the nursing laws. LSA-R.S. 37:918(6)-(8). The board may deny, revoke, suspend, probate, limit, or restrict any license to practice as a registered nurse or impose fines, and assess costs, or otherwise discipline a licensee, upon proof that the licensee: is unfit or incompetent by reason of negligence,
 
 [5]
 
 habit, or other cause;
 
 [6]
 
 or is guilty of moral turpitude.
 
 [7]
 
 LSA-R.S. 37:921 and La. Admin. Code, Title 46, Part XLVII, § 3403 (in pertinent part).
 

 
 *814
 
 In this case, the Nursing Board determined that the referenced nurse had violated one or more of the foregoing provisions and summarily suspended his license. In preparation for a post-suspension/revocation hearing, the board issued the subpoenas at issue herein.
 

 The Nursing Board is granted the power to issue subpoenas by LSA-R.S. 87:918, which provides, in pertinent part, that the Nursing Board shall “[h]ave all other powers necessary and proper to the performance of their duties, including but not limited to the power to subpoena.” Further, LSA-R.S. 49:956, authorizes subpoena power in favor of administrative agencies, generally, providing, in pertinent part, that “[a]ny agency or its subordinate presiding officer shall have power to sign and issue subpoenas in the name of the agency requiring attendance and giving of testimony by witnesses and the production of books, papers, and other documentary evidence.”
 

 Generally speaking, a subpoena issued by an administrative agency is valid, must be obeyed, and will be upheld and enforced by the courts so long as the investigation is for a lawfully authorized purpose within the power of the legislature to command, the information sought is relevant and material | into the investigation, and the conditions under which production of records is ordered are not unreasonable.
 
 Mary Moe, L.L.C. v. Louisiana Board of Ethics,
 
 2003-2220, pp. 10-11 (La.4/14/04), 875 So.2d 22, 30;
 
 Francis v. Accardo,
 
 602 So.2d 1066, 1068-69 (La.App. 1 Cir.1992).
 
 See also
 
 LSA-C.C.P. art. 1354(A).
 
 [8]
 

 During the course of this litigation, the defendants/appellees have argued that even though the Nursing Board is statutorily vested with the power to issue subpoenas, that power is not without limit. We agree.
 

 While we recognize the importance of the Nursing Board’s
 
 statutory
 
 duty to ensure that nurses who pose a threat to the physical and emotional well-being of the patients they serve are removed from the practice of nursing, we must balance that interest against the
 
 constitutional
 
 duty imposed on a district attorney to have charge of every criminal proceeding in his district.
 

 The Louisiana Constitution mandates that the “district attorney, or his designated assistant, shall, have charge of every criminal prosecution by the state in his district.” LSA-Const. Art. V, § 26(B).
 
 See also
 
 LSA-R.S. 16:1. A district attorney is vested with broad and sweeping powers as part and parcel of his role as the state’s prosecuting attorney, and he exercises a portion of the sovereign power of the state within the district of his office. The district attorney has entire charge and control of every criminal prosecution instituted or pending in his district and determines whom, when and how he shall prosecute.
 
 [9]
 
 Furthermore, the jurisdiction of the district Inattorney to prosecute those who violate state criminal statutes is exclusive; it can only be constrained or curtailed when it operates to the prejudice of a contrary constitutional mandate, and even then only with due deference to the district attorney’s constitutional prerogative.
 
 Board of Commissioners of Orleans Levee
 
 
 *815
 

 District v. Connick,
 
 94-3161 (La.3/9/95), 654 So.2d 1073, 1077 (citing
 
 State v. Perez,
 
 464 So.2d 737, 744 (La.1985);
 
 Diaz v. Allstate Insurance Company,
 
 433 So.2d 699, 701 (La.1983);
 
 City of Baton Rouge v. Short,
 
 345 So.2d 37, 40 (La.1977)).
 

 A crime, as opposed to any manner of civil offense, is a direct affront to the sovereign; the sovereign qua sovereign is therefore a party to such suits in its role as prosecutor. Because the sovereign has a direct interest in the initiation and resolution of a criminal proceeding, the rules of procedure applicable to it differ considerably from those applicable to a civil action. In addition, because a criminal action offers the prospect of a citizen opposed by the vast and impersonal resources of the state, constitutional protections come to the fore in the criminal context, sculpting the applicable substantive and procedural mechanisms far more comprehensively than in a civil setting. In short, when it addresses a criminal cause the sovereign is not concerned with providing an “effective arena” for two relatively equal litigants to match wits; rather, it is concerned with providing an effective way of vindicating its interest in promoting criminal justice while respecting the “fundamental fairness” that due process and related constitutional guarantees ensure colors the exercise of criminal jurisdiction.
 
 Board of Commissioners of Orleans Levee District v. Connick,
 
 654 So.2d at 1080.
 

 The balancing of a party’s interest in obtaining civil relief against the district attorney’s right to investigate and prosecute state crimes is a balancing that is weighted towards the district attorney because of the | ^singular interest of the sovereign in criminal matters and the way in which that interest is vindicated in the criminal justice system.
 
 Id.
 
 at 1081.
 

 ' In the instant case, during the district court hearing, Nursing Board Director of Investigations Joy Peterson testified that the board has only four investigators and averages about thirty-five new complaints against nurses each month. Ms. Peterson testified that the board was particularly interested in making a good case against the nurse at issue because it had received several prior complaints about him involving improper contact with patients, but had been unable to take action because these other patients, due to their mental status, would not have been able to testify against him. Ms. Peterson stated that in preparing disciplinary cases the board regularly directs subpoenas to law enforcement agencies to supplement its own investigation results; some of these agencies comply and some do not. Further, Ms. Peterson admitted that copies of the material it receives in response to these subpoenas must be turned over to the nurse who is the subject of the disciplinary action if that material will be used in the disciplinary hearing. Ms. Peterson further acknowledged that Nursing Board employees had interviewed both the victim and the accused nurse in this case.
 

 By means of subpoena, the Nursing Board sought any and all of the information in the possession of the Sheriff and the D.A. concerning the offense. These requests were made less than forty-five days after the Sheriffs arrest of the suspect nurse, and before any bill of information or indictment was filed. Before the suspect nurse was formally charged, even he had no right to the discovery of documents or reports in the possession of | lsthe D.A.
 
 [10]
 
 Furthermore, the Nursing Board
 
 *816
 
 admitted that it would have turned over to the nurse at issue any material it received from the D.A. or the Sheriff, which it intended to use during its hearing on the nurse’s license revocation. Such an action would surely tip law enforcement’s hand in favor of the suspect nurse, jeopardizing the D.A.’s case before formal prosecution commenced. Under such a scenario, the D.A.’s interest in preserving the best possibility of success in an anticipated criminal prosecution would take precedence over that of the Nursing Board’s interest in bolstering the evidence it possessed for a disciplinary proceeding.
 
 [11]
 

 It is apparent that the legislature recognized that the greater public interest protected by law enforcement in the investigation and prosecution of crimes should take precedence over the civil administrative interests served by the Nursing Board. Louisiana Revised Statute 87:926 essentially provides that actions under the
 
 *817
 
 nursing laws shall not interfere with criminal prosecutions by the attorney general or district attorney of any parish.
 
 [12]
 

 See also Campbell v. Eastland,
 
 307 F.2d 478, 487 (5th Cir.1962),
 
 cert. denied,
 
 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963) (stating that administrative policy gives priority to the public interest in law enforcement).
 

 After a thorough review of the issues presented in this case, we conclude that the Nursing Board’s subpoenas were both unreasonable (in seeking to obtain law enforcement records prior to the filing of criminal charges) and represented interference with the prosecutorial responsibilities of the D.A. (by the Nursing Board’s practice of providing all documents in its possession that it intended to use in a disciplinary hearing to the accused 11finurse, thereby disclosing the essentials of the D.A'.’s criminal ease
 
 [13]
 
 ) in violation of LSA-R.S. 37:926. Therefore, we conclude the district court did not err in denying injunctive and declaratory relief to the Nursing Board and in the granting the motions to quash the subpoenas.
 

 Having resolved the issues on appeal on this basis, we find it unnecessary to address the remaining assignments of error, particularly the arguments relative to Louisiana’s public records law.
 
 [14]
 

 CONCLUSION
 

 For the reasons stated herein, the motion to dismiss the appeal is denied; the motion to supplement the appellate record is denied; and the district court judgment is affirmed. All costs of this appeal, in the amount of $1,240.50, are assessed to the Louisiana Board of Nursing.
 

 
 *818
 
 MOTION TO DISMISS APPEAL DENIED; MOTION TO SUPPLEMENT APPELLATE RECORD DENIED; AFFIRMED.
 

 WHIPPLE, J., concurs in the result.
 

 [1]
 

 . Section 3411(H) provides: "Emergency Action. If the board finds that public health, safety, and welfare requires emergency action and a finding to that effect is incorporated in its order, summary suspension of a license may be ordered by the executive director or designee pending proceedings for revocation or other action. Such proceedings shall be promptly instituted and determined at the next regularly scheduled board meeting.”
 

 [2]
 

 . Article 202(B)(1)(e) provides, in pertinent part:
 

 A court shall take judicial notice of the following if a party requests it and provides the court with the information needed by it to comply with the request, and may take judicial notice without request of a party of: .... [r]ules and decisions of boards, commissions, and agencies of the United States or of any state, territory, or other jurisdiction of the United States which have been duly published and promulgated and which have the effect of law within their respective jurisdictions.
 

 [3]
 

 . The Nursing Board has duly published this fact on its Internet website, wherein it is stated that following a disciplinary action "from the September 14-16, 2009 Board Meeting" the license of Bruce Raymond Greene was "permanently revoked” for "Sexual Misconduct: Immediate Threat to Health or Safety.”
 
 See http://www.lsbn.state.la.us/ documents/Examiners/ExaminerFall2009.pdf.
 

 [4]
 

 .The date of the alleged offense was April 9, 2009, and the nurse was arrested on April 10, 2009. The Nursing Board sent subpoenas to the Sheriff and D.A. on April 14, 2009, May 6, 2009, and May 20, 2009. By May 22, 2009 both the Sheriff and the D.A. had responded to the subpoenas indicating that, aside from the arrest report that had been provided to the board, no additional information would be provided because the matter was under consideration for possible criminal prosecution. On May 22, 2009 the Nursing Board filed the instant suit seeking to enforce its subpoenas. By June 2009 the Nursing Board had summarily suspended the nurse's license, as a post-suspension hearing was originally scheduled for its June 9, 2009 meeting, though the matter was continued. During its September 14-16, 2009 meeting, the Nursing
 
 *813
 
 Board held the hearing and permanently revoked the nurse’s license.
 

 [5]
 

 . “Negligence” is defined as "a breach of duty of care owed to a party.” LAC 46:XLVII, § 3405.
 

 [6]
 

 . “Other Causes” is defined as including, but is not limited to: the failure to practice nursing in accordance with the legal standards of nursing practice; the failure to utilize appropriate judgment; the failure to act, or negligently or willfully committing any act that adversely affects the physical or psychosocial welfare of the patient; the violation of a rule adopted by the board, an order of the board, or a state or federal law relating to the practice of professional nursing; or as exceeding professional boundaries, including but not limited to sexual misconduct'. LAC 46:XLVII, § 3405.
 

 [7]
 

 . “Moral turpitude” is defined as “an act which is dishonest, or contrary to good morals.” LAC 46:XLVII, § 3405.
 

 [8]
 

 . Louisiana Code of Civil Procedure Article 1354(A), provides in pertinent part: "The court in which the action is pending in its discretion may vacate or modify the subpoena if it is unreasonable or oppressive.”
 

 [9]
 

 . Code of Criminal Procedure Article 61 provides: "Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.”
 

 [10]
 

 . In accordance with LSA-C.Cr.P. arts. 521 and 729, a defendant must file his motion for discovery within fifteen days
 
 after
 
 arraignment. Items a defendant in a criminal proceeding, upon his motion, is entitled to obtain through discovery include the following: any
 
 *816
 
 relevant written or recorded confession or statement of any nature, including recorded testimony before a grand jury; a copy of any record of his criminal arrests and convictions that is in the possession of the district attorney or the appropriate law enforcement agency; books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, favorable to the defendant, which are within the possession, custody, or control of the State, and which are material and relevant to the issue of guilt or punishment, or are intended for use by the State as evidence at the trial, or were obtained from or belong to the defendant (subject to the limitation of Article 723); any results or reports, or copies thereof, of a physical or mental examination and of scientific tests or experiments, made in connection with or material to the particular case, which are in the possession, custody, control, or knowledge of the State and intended for use at trial (exculpatory evidence shall be produced under Article 719 even though it is not intended for use at trial); and, any relevant ,written or recorded confessions or inculpatory statements made by a codefendant and intended for use at trial (exculpatory evidence shall be produced under Article 722 even though it is not intended for use at trial). LSA-C.Cr.P. arts. 716(A), 717, 718, 719, and 722. In addition and upon the defendant's motion, whenever the court orders the defendant to provide urine, blood, saliva, or hair samples or samples of other bodily substances for deoxyribo-nucleic acid testing in a criminal case, the defendant shall be authorized to acquire one-half of the deoxyribonucleic acid sample to be tested separately by the defendant at his expense. LSA-C.Cr.P. art. 719(B). Further, the defendant, upon his motion, is entitled to be informed of: the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the State intends to offer in evidence at the trial; the State’s intent to offer evidence of the commission of any other crime admissible under the authority of LSA-C.E. art. 404 (provided that the State shall not be required to inform the defendant of the its intent to offer evidence of offenses that relate to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding or other crimes for which the accused was previously convicted); and, the State’s intent to use statements of coconspirators pursuant to LSA-C.E. art. 801(D)(3)(b). LSA-C.Cr.P. arts. 716(B), 720, and 721. Also, the defendant, upon his motion, must be informed of the substance of any oral statement that the State intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer. LSA-C.Cr.P. art. 716(C). However, it should be noted that, except as provided in Articles 716, 718, 721, and 722, the discovery provisions of the Code of Criminal Procedure do not authorize the discovery or inspection of reports, memoran-da or other internal State documents made by the district attorney or by agents of the State in connection with the investigation or prosecution of the case, or of statements made by witnesses or prospective witnesses, other than the defendant, to the.district attorney, or to agents of the State, as provided by LSA-C.Cr.P. art. 723.
 

 [11]
 

 . The Nursing Board admitted before the district court that its burden of proof to revoke a nursing license is by a preponderance of the evidence, which is less than that required in a criminal proceeding.
 

 [12]
 

 . Louisiana Revised Statute 37:926 is found in Title 37, "Professions and Occupations,” Chapter 11, "Nurses,” Part I, "Registered Nurses,” and provides:
 

 Acts constituting violations as set out in R.S. 37:925 shall be subject to prosecution. This prosecution shall be brought in the name of the state, but nothing in this Part shall prevent or interfere with the prosecution of such proceedings by the attorney general or the district attorney of any parish, when the proceedings have been initiated by him.
 

 Louisiana Revised Statute 37:925, lists various violations and penalties, and incorporates those violations listed in LSA-R.S. 37:921 (which encompasses the alleged nursing misconduct at issue herein) in its prohibition that "[n]o person shall engage in any of the following activities: ... [v]iolate any provision of this Part.”
 

 [13]
 

 . Traditionally, the narrow scope of discovery in criminal litigation is justified by three considerations which are said to be peculiar to criminal law. First, there has been a fear that broad disclosure of the essentials of the prosecution's case would result in perjury and manufactured evidence. Second, it is supposed that revealing the identity of confidential government informants would create the opportunity for intimidation of prospective witnesses and would discourage the giving of information to the government. Finally, it is argued that since the self-incrimination privilege would effectively block any attempts to discover from the defendant, he would retain the opportunity to surprise the prosecution whereas the state would be unable to obtain additional facts. This procedural advantage over the prosecution is thought to be undesirable in light of the defendant’s existing advantages.
 
 Campbell v. Eastland,
 
 307 F.2d at 487 n. 12.
 

 [14]
 

 .We note the conflict in the jurisprudence as to the effect of the public records law, as expressed in LSA-R.S. 44:3, exempting as public records the disclosure of the records of law enforcement agencies related to pending or reasonably anticipated criminal litigation; some cases apply LSA-R.S. 44:3 as creating a privilege against subpoenas issued to law enforcement agencies in civil proceedings (Co
 
 nella v. Johnson and Freeman v. Guaranty Broadcasting Corp.),
 
 while other cases declare that LSA-R.S. 44:3 does not create a privilege exempting law enforcement records from production for court purposes
 
 {see State
 
 v.
 
 Berry,
 
 324 So.2d 822 (La.1975) and
 
 State v. Babin,
 
 319 So.2d 367 (La.1975)).