875 So.2d 22 (2004)
MARY MOE, L.L.C., Nancy Noe, L.L.C., Peter Poe, L.L.C., and Richard Roe, L.L.C., Louisiana Limited Liability Companies Proceeding Pseudonymously
v.
LOUISIANA BOARD OF ETHICS.
No. 2003-C-2220.
Supreme Court of Louisiana.
April 14, 2004.
Order Granting Rehearing in Part July 2, 2004.
*24 Maris E. LeBlanc, R. Gray Sexton, Baton Rouge, Kathrin E. Yates, for applicant.
Jane E. Booth, John D. Rawls, Booth & Booth, Metairie, for respondent.
KNOLL, Justice.
This civil case addresses the legal question of whether the Louisiana Board of Ethics ("Board") exceeded its expressed authority provided by La. R.S. 18:1511.4(C), the Louisiana Campaign Finance Disclosure Act ("CFDA"), in issuing the subpoenas duces tecum at issue in this writ. The district court found the subpoenas did exceed the Board's authority and permanently enjoined the Board from issuing any subpoena upon the plaintiffs. The court of appeal affirmed the district court's ruling on the subject subpoenas, but modified the permanent injunction to enjoin the Board only from enforcing or reissuing the four subpoenas at issue. We granted this writ to address the validity of the subpoenas duces tecum and the permanent injunctions. Mary Moe, L.L.C. et al. v. Louisiana Board of Ethics, 03-2220 *25 (La.11/26/03), 860 So.2d 1133. For the following reasons we reverse, finding the lower courts erred in enjoining the Board from issuing and enforcing the relevant subpoenas duces tecum.

FACTS AND PROCEDURAL HISTORY
The instant suit for declaratory judgment and injunction proceedings arises out of a confidential investigation initiated by the Board into the activities of the New Alliance Business Political Action Committee ("New Alliance") and its four contributors comprised of Louisiana Leadership, L.L.C., Louisiana Optimism, L.L.C., Louisiana Spirit, L.L.C., and Louisiana Team Work, L.L.C. ("LLCs")[1] in relation to the February 2, 2002 New Orleans Mayoral Election Campaign. The investigation was commenced by a unanimous vote of the Board based upon a number of facts, which aroused the Board's suspicion, particularly:
 On January 24, 2002, a group named "The New Alliance Business Political Action Committee" registered as a political committee pursuant to the CFDA, listing Gail Masters as the chairperson of the Committee.
 New Alliance filed late disclosure reports for the February 2, 2002 election listing four contributors: Louisiana Leadership, L.L.C., Louisiana Optimism, L.L.C., Louisiana Spirit, L.L.C., and Louisiana Team Work, L.L.C.
 The LLCs were organized with the Secretary of State as limited liability companies on January 14, 2002, and Gail Masters is listed as the registered agent and organizer for each of the LLCs.
 Late fees totaling $4,240 assessed against New Alliance were paid by check drawn upon the account of Louisiana Leadership, L.L.C. New Alliance listed this payment as an expenditure on its disclosure reports.
 The Board received allegations, with supporting documentation, that election advertisements originally purchased in the name of Louisiana Teamwork, L.L.C., were changed to list New Alliance as the sponsor of the ads.
In furtherance of its investigation, the Board issued subpoenas duces tecum to Gail Masters ("Masters"), as chairman of New Alliance and registered agent of each of the four LLCs, commanding the production of the following documents for the time frame of January 1, 2002 through March 15, 2002 from each of the five entities:
1. Any and all records of financial transactions of the entity.
2. Records of any and all receipts or income of the entity, including canceled checks, deposit slips, records of credit card receipts, or any other electronic transfers, and/or any other internal records of the entity evidencing income or receipts of the entity.
3. Copies of any and all checks written by the entity and/or any other payments made by the entity by wire transfer or any other electronic means.
4. Copies of any and all invoices and/or billing statements received by the entity.
The LLCs did not respond to the subpoenas, but rather filed the present suit against the Board seeking a temporary restraining order, preliminary injunction, permanent injunction, and declaratory judgment to quash the subpoenas and prevent their reissuance. The petition "alleged *26 that the subpoenas constituted an attempt at an unreasonable search and seizure in violation of the petitioners' right to privacy, and that the authority granted the Board by the legislature under the [Campaign Finance Disclosure Act] is in violation of the Louisiana Constitution." New Alliance responded to the subpoenas in a writing that asserted no such records existed because the organization had never maintained a bank account and did not receive any invoices or billing statements.
The district court issued a temporary restraining order and, after a closed hearing, denied the Board's exceptions of nonconformity of the petition and insufficiency of service of process. The district court orally granted the LLCs request for a preliminary injunction, stating:
The subpoenas seek to get information from these companies as they were listed as contributors to a political action committee known as New Alliance.... The Court finds that to order these subpoenas to be answered would invade the right to privacy of these corporations as they were duly organized under the laws of the State of Louisiana. And that while the New Alliance ... has an obligation under the law to disclose its contributors, the Court does not find that to extend that requirement of law to the business records of the contributors is warranted, which is coveredwhich is not covered by the right to privacy. And the Court finds that the right to privacy of their records to not disclose to them the individual business corporate records of the four corporations. Therefore, the Court will grant the Preliminary Injunction.
The district court issued a written judgment, which noted the stipulation of the parties who stated on the record they would waive their right to a trial on the merits and consent to entry of a final judgment and a permanent injunction enjoining the Board from "directly or indirectly enforcing, issuing, or reissuing any subpoena or subpoena duces tecum upon or directed against [the four named LLCs] or ... any of those companies' members, officers, employees, agents or attorneys."
On appeal, the appellate court found the Board clearly had the authority to issue subpoenas on the LLCs because La. R.S. 18:1511.4(C) expressly gives the Board subpoena power over any person who may have information relevant to an investigation, not merely over those registered as political committees. The court of appeal also held the suspicious circumstances in this present case provided sufficient cause for the Board to initiate a confidential investigation into the activities of New Alliance, which necessarily included obtaining information from its only contributors, the four LLCs.
Although the appellate court found the subpoenas in the present case were not sufficiently tailored to the Board's objectives and were oppressive and unduly burdensome within the terms of La. R.S. 18:1511.4, the court also found the district court's injunction overly broad because it prevented the Board from "directly or indirectly enforcing, issuing, or reissuing any subpoena or subpoena duces tecum upon or directed against" any of the LLCs. Acknowledging the Board's authority to issue subpoenas duces tecum upon the LLCs so long as those subpoenas are "carefully tailored to elicit only records and documents pertinent to the Board's investigation," the court modified the district court's permanent injunction, enjoining the Board "from directly or indirectly enforcing, issuing, or reissuing to the plaintiff LLCs the four subpoenas which are the subject of this litigation," and affirmed the judgment as amended. This Court granted the Board's writ application to review the scope of the *27 Board's authority to issue subpoenas duces tecum in its investigatory capacity and to determine whether the issuance of the permanent injunctions were correct vel non.

LAW AND ANALYSIS

The Louisiana Board of Ethics
The Legislature created and enabled the Louisiana Board of Ethics for Elected Officials through the enactment of La. R.S. 43:1132 pursuant to Article X, Section 21 of the Louisiana Constitution, empowering the Board to enforce the provisions of the Louisiana Code of Governmental Ethics and entrusting the Board with the responsibility to regulate campaign practices, by designating the Board to serve as the Supervisory Committee on Campaign Finance Disclosure. 1988 La. Acts 994; La. Rev.Stat. §§ 42:1132(C) & 18:1511.1(A) (2003); James S. Burland, Louisiana Campaign Finance: A New Era of Increased Regulation and Limitation of Election Activities in Louisiana, 35 La. B.J. 434, 435 (Apr.1989); see also, Duplantis v. Louisiana Bd. of Ethics, 00-1956 (La.3/23/01), 782 So.2d 582. In its capacity as the Supervisory Committee on Campaign Finance Disclosure, the Board regulates and enforces the requirements of the CFDA. See La.Rev.Stat. § 18:1483 et seq. (2003).
Recognizing "that the effectiveness of representative government is dependent upon a knowledgeable electorate and the confidence of the electorate in their elected public officials," the Legislature enacted the CFDA to provide public disclosure of the financing of election campaigns and to prevent unfair campaign practices with a view toward promoting public confidence in the integrity of our elected officials. La.Rev.Stat. § 18:1482 (2003); see also, Burland, supra. Accordingly, the CFDA requires the disclosure of those transactions entered into by political committees and individual contributors for the purpose of promoting or opposing a candidate or proposition in an election. Burland, supra.
A political committee is "two or more persons, other than a husband and wife, and any corporation organized for the primary purpose of supporting or opposing one or more candidates, propositions, recalls of a public officer, or political parties, which accepts contributions in the name of the committee, or makes expenditures from committee funds or in the name of the committee, or makes a transfer of funds to or receives a transfer of funds from another committee, or receives or makes loans in an aggregate amount in excess of $500 within any calendar year." La.Rev.Stat. § 18:1483(14)(a)(1). Any political committee that receives contributions, makes expenditures, or participates in the transfer of funds in excess of $500 a year must register with the Board by filing a statement of organization and may not participate in any election-related transactions until the statement of organization is filed. La.Rev.Stat. § 18:1491.1.
Such registration must provide "the name and address of the committee and its chairman, officers, or directors, the names, addresses, and relationships of affiliated organizations, a listing of all banks, safety deposit boxes, or other depositories used for committee funds, and the estimated number of members and a certification of the membership." La.Rev.Stat. § 18:1491.1(B). In addition to registering with the Board, the political committee must also submit periodic reports detailing the organization's financial activities. La. Rev.Stat. §§ 18:1491.6, 1491.7, 1495.4, 1495.5; see also, Burland, supra, at 435-36. Any failure to submit or an untimely submission of the required reports constitutes a violation of the CFDA. La. Rev. Stat. § 18:1505.1. Moreover, any person *28 who makes expenditures during an election campaign exceeding $500 in the aggregate must report the independent expenditures to the Board. See La.Rev.Stat. §§ 18:1484(4) & 1501.1.

The Board's Enforcement Authority
Under La. R.S. 18:1511.4(A), the Board, as the supervisory committee, may investigate any apparent or alleged violation of the CFDA, and its enforcement authority commences when the Board is presented with information suggesting a violation of the CFDA has occurred. Upon receipt of this information, the Board is obliged to consider whether to institute a confidential investigation. See La.Rev.Stat. §§ 18:1511.4 & 1511.5.
The Board by a two-thirds vote of its membership, or by a vote of eight of the eleven Board members, may initiate such an investigation when, as a result of its review of reports, other documents, or information filed under the provisions of the CFDA, it determines there is reason to believe such a violation of the CFDA has occurred. La.Rev.Stat. § 18:1511.4(A). The Board "shall initiate an investigation when it makes a determination upon receipt of a sworn complaint filed with the supervisory committee by any person who believes a violation of the CFDA has occurred." Id.
Once the Board votes to institute a confidential investigation, the person or committee who is the subject of the investigation is notified of the investigation by certified mail, and when the investigation stems from allegations received in a sworn complaint, the Board is required to enclose a copy of the complaint in its notification. After the Board sends the notification, the investigation is conducted by an investigator for the Board. The Board is given the authority to examine or audit records and reports required to be maintained or filed under the provisions of the CFDA. The Board also has the power and authority "`to hold hearings, to subpoena witnesses, administer oaths, compel the production of books, records, and papers, public and private, require the submission under oath of written reports or answers to questions, and to do all that is necessary to effect the provisions" of the CFDA. La.Rev. Stat. § 18:1511.4(C)(1).
If the Board issues a subpoena, and the subject refuses to comply with the subpoena, La. R.S. 18:1511.4(D) authorizes the Board to seek enforcement of its subpoena in the district court. On the other hand, La. R.S. 18:1511.4(C)(2) grants the authority to the district court to make any order which justice requires to protect "an affected party including, but not limited to, a candidate, committee, any member of a committee, a prospective witness or any person whose books, records, papers, or other documents are the subject of any subpoena," from annoyance, embarrassment, oppression, or undue burden or expense.
When the results of the investigation by the Board indicate that a violation of the CFDA has occurred which is subject to civil penalties, the Board is authorized by statute to file civil proceedings in district court to collect the civil penalties. La.Rev. Stat. § 1511.5; see also, State Through Bd. of Ethics for Elected Officials v. Green, 566 So.2d 623, 624 (La.1990). "Each complaint received by the Board, each review by the committee of reports for compliance with the provisions of the CFDA, and all information forwarded to or gathered by the Board with regard to such complaints or reviews and all investigations and proceedings of the Board with regard to the same shall be kept strictly confidential" until such action is taken by the Board. La.Rev.Stat. § 18:1511.8.

*29 The Board's Investigation of the LLCs

In the instant case, the Board commenced its investigation by a unanimous vote of its members based upon a number of facts, which aroused suspicion that the LLCs were in fact political committees, i.e. entities organized for the primary purpose of supporting or opposing candidates. After searching the public domain, the Board found no evidence the LLCs had any business purpose at all as their Articles of Organization were silent as to any particular or specific purpose for which they were formed. Also, the Board discovered the LLCs had no phone listings, no occupational licenses in the City of New Orleans, no records of transactions filed in the Conveyance Records of Orleans Parish, and no registrations with the Louisiana Department of Revenue. Believing there was no other method of determining whether the primary purpose of the LLCs was to "support or oppose" candidates, the Board issued the subpoenas duces tecum requiring the production of the LLCs' records of financial transactions spanning the period of January 1, 2002 through March 15, 2002, the months immediately preceding and following the February 2002 New Orleans Mayoral Election. The Board is now prevented from enforcing these subpoenas by the lower courts' permanent injunction, which the Board is presently seeking review of by this court.

Standard of Review
The standard of review for the issuance of a permanent injunction is the manifest error standard. Parish of Jefferson v. Lafreniere Park Foundation, 98-146 (La.App. 5 Cir. 7/28/98), 716 So.2d 472, 478; Pogo Producing Co. v. United Gas Pipe Line Co., 511 So.2d 809, 812 (La.App. 4th Cir.1987), writ denied, 514 So.2d 1164 (La.1987). The issuance of a permanent injunction takes place only after a trial on the merits in which the burden of proof is a preponderance of the evidence, but a preliminary injunction may be issued on merely a prima facie showing by the plaintiff that he is entitled to relief. Werner Enterprises, Inc. v. Westend Dev. Co., 477 So.2d 829, 832 (La.App. 5th Cir.1985); Kliebert Educational Trust v. Watson Marines Services, Inc., 454 So.2d 855 (La. App. 5th Cir.1984), writ denied, 457 So.2d 682 (La.1984); Federal Nat'l Mortg. Ass'n. v. O'Donnell, 446 So.2d 395, 399 (La.App. 5th Cir.1984); General Motors Acceptance Corp. v. Daniels, 377 So.2d 346, 348 (La. 1979). Notably, parties may agree to consolidate trial on the merits of a permanent injunction with the judgment issuing a preliminary injunction. Dunn v. Sutton, 381 So.2d 1221, 1221 (La.1980).
In this case, the parties agreed to a consolidation of the trial on the merits and the rule of the preliminary injunction. Under these circumstances, the permanent injunction is not a result of a trial on the merits, but is based on a prima facie showing by the plaintiff that he is entitled to a preliminary injunction. Given the stipulation in this case, the court of appeal determined the district court used the standard for granting a preliminary injunction, i.e. a prima facie showing, instead of a preponderance of the evidence standard. Thus, the court of appeal held the standard of review for the conclusions made by the district court based on its findings of fact were not subject to the higher burden of proof and, therefore, should not be subject to the higher standard of review. We agree and engage in a de novo review of the court of appeal's granting of the permanent injunction enjoining the Board from issuing, enforcing, or reissuing the four subpoenas duces tecum at issue in this case.[2]

*30 The Subpoenas Duces Tecum

To determine whether the court of appeal erred in granting the permanent injunctions, we must examine the subpoenas duces tecum. "Generally speaking, a subpoena is valid, must be obeyed, and will be upheld and enforced by the courts so long as the investigation is for a lawfully authorized purpose within the power of the legislature to command, the information sought is relevant and material to the investigation, and the conditions under which production of records is ordered are not unreasonable." Francis v. Accardo, 602 So.2d 1066, 1068 (La.App. 1st Cir. 1992), (quoting 2 Am.Jur.2d Administrative Law § 263 (1962)); see also, Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); U.S. v. Morton Salt Co., 338 U.S. 632, 652-53, 70 S.Ct. 357, 94 L.Ed. 401 (1950); See v. City of Seattle, 387 U.S. 541, 544, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); Donovan v. Lone Steer, Inc., 464 U.S. 408, 415, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984).
An administrative agency's power to issue investigative subpoenas depends upon legislative authorization in a particular enabling statute. Lee Modjeska, Administrative Law: Practice and Procedure § 2.4, 26 (1982); Charles H. Koch, Administrative Law and Practice § 3.12, 152 (2d ed.1997). In the present case, the court of appeal correctly found La. R.S. 18:1511.4(C) expressly gives the Board subpoena power over any person who may have information relevant to an investigation. See La.Rev.Stat. § 18:1511.4(C). This subpoena power grants to the Board the lawful authority to issue subpoenas on the LLCs in furtherance of its investigation into the potential violations of the CFDA.
Moreover, the evidence sought by the subpoena must be reasonably relevant and material to the investigation's lawfully authorized purpose. See U.S. v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); Modjeska, supra, at 27; Koch, supra, at 31 (West Supp.2003-2004). The purpose of the Board's investigation is to determine whether the LLCs were political committees or rather, whether the LLCs were organized for the primary purpose of supporting or opposing candidates. The financial records subject to the Board's subpoenas are material and relevant to the Board's investigation primarily because the Board has no other method of determining whether the primary purpose of the LLCs was to support or oppose candidates given the fact the public domain is devoid of any evidence indicating the LLCs have any business purpose at all. Put simply, the Board has no other way to determine the business purpose of the LLCs except to examine the records of their receipts and disbursements during the relevant time period.
The subpoena must be sufficiently limited in scope and specific in directive so that compliance will not be unreasonable, overbroad, or unduly burdensome. See, Donovan, 464 U.S. at 415, 104 S.Ct. 769; See, 387 U.S. at 544, 87 S.Ct. 1741; Koch, supra, at 31 (West Supp. 2003-04). Contrary to the conclusions reached by the lower courts, we do not find the subpoenas unreasonable, overbroad, or unduly burdensome on the LLCs, nor do we find requiring the LLCs to answer the subpoenas violates their privacy rights. First, the subpoenas are narrowly tailored as they require the production of the entities' records of financial transactions spanning a period of campaign *31 activity for the February 2, 2000 New Orleans Mayoral Election, specifically from January 14, 2002[3] to March 15, 2002, an eight-week period. Based on the infancy of these LLCs, especially considering the LLCs were first organized on January 14, 2002, we agree with the Board it is only likely two months of bank statements will need to be produced and examined, because the Board only requests the financial records of the LLCs from their inception on January 14, 2002, until March 15, 2002. Moreover, the LLCs fail to demonstrate how the subpoenas are unduly burdensome, given the LLCs will most likely only have to produce two bank statements each.
Second, as regards the LLCs' privacy claim, all investigations by the Board are strictly confidential as required by the CFDA. Furthermore, the Board's investigation will not be made public unless and until the Board files an enforcement action against the LLCs in district court which would only occur after the investigation is concluded and the Board determines a violation of the CFDA has in fact occurred requiring civil remediation.
Finally, the LLCs have repeatedly argued due process concerns require the Board have probable cause to issue the subpoenas. However, the Board as an administrative agency employing its investigatory powers in its investigatory function does not need probable cause to exercise its investigative or subpoena powers.[4]Francis, 602 So.2d at 1066; see also, Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); Georator Corp. v. EEOC, 592 F.2d 765 (4th Cir. 1979). "It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires [only] that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome," Donovan, 464 U.S. at 415, 104 S.Ct. 769. As discussed above, we find the subpoenas at issue more than adequately comport with such requirements.
Additionally, due process is an elusive concept. Hannah, 363 U.S. at 446, 80 S.Ct. 1502.[5] Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Id. When a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. Id. Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play which through the years have become associated with differing types of proceedings. Id. Undoubtedly, the reason for this distinction is to prevent the sterilization of investigations by burdening them with heightened requirements, such as probable cause. See Hannah, 363 U.S. at 448, 80 S.Ct. 1502. Thus, the Board needs only sufficient reasonable. *32 cause to believe that a violation of the CFDA has occurred and that the records sought are relevant and material to its investigation of the alleged violation to exercise its subpoena power and obtain the records of the LLCs.
As the appellate court found, the suspicious circumstances cited by the Board, specifically the assertion by New Alliance that it did not have a checking account, coupled with the suspicious pattern of expenditures and contributions, as well as the evidence that one of the LLCs paid for an advertisement sponsored by New Alliance and paid a statutory fine owed by New Alliance, provided more than sufficient reasonable cause for the Board to initiate a confidential investigation into the activities of New Alliance and its sole contributors, the LLCs. Moreover, as the appellate court noted, cash expenditures by political committees are prohibited by the CFDA, as is the payment of one political committee's obligation by another political committee. Furthermore, if one of the LLCs had made direct payments of campaign-related expenses totaling more than five hundred dollars, the LLC would be subject to the same reporting regulations as a political committee under the CFDA. See La.Rev.Stat. § 18:1501.1. Clearly, all these factors sufficiently warranted an investigation of the LLCs by the Board and the issuance of the subpoenas.
Moreover, we find the LLCs have not been deprived of due process in this matter. The LLCs exercised their rights under La. R.S. 18:1511.4(C)(2) and subjected the issuance of the subpoenas to review not only by the district court, but also by the court of appeal and this Court. The LLCs have been afforded sufficient due process.
In conclusion, we find the Board had the statutory authority and sufficient reasonable cause to issue the subpoenas duces tecum, which requested the material and relevant financial records of the LLCs for the limited time period spanning the February 2, 2002 New Orleans Mayoral Election, in an effort to further its investigation of the LLCs' activities to determine whether the entities were created primarily to support or oppose a candidate in the election.

DECREE
For the foregoing reasons, the judgments of the lower courts that permanently enjoined the Louisiana Board of Ethics from issuing the subpoenas duces tecum to the Louisiana Leadership, L.L.C., Louisiana Optimism, L.L.C., Louisiana Spirit, L.L.C., and Louisiana Team Work, L.L.C. are reversed, and the plaintiffs are ordered to respond to the subpoenas duces tecum issued on them by the Louisiana Board of Ethics.
REVERSED.

ON REHEARING
PER CURIAM.
Rehearing granted in part, otherwise denied. Rehearing is granted for the limited purpose of remanding this case to the district court for a hearing on the plaintiffs' constitutional challenge to the Board's statutory powers over campaign finances.
NOTES
[1] The district court and appellate court both allowed the LLCs to proceed pseudonymously, hence the present caption in this matter.
[2] Moreover, we denied the LLCs' writ application in which the LLCs raised as their sole assignment of error the appellate court's use of the de novo standard of review. See Mary Moe, L.L.C. et al. v. Louisiana Board of Ethics, 03-2200 (La.11/26/03) 860 So.2d 1133.
[3] The subject subpoenas actually reflect a January 1, 2002 commencement date, but as the LLCs did not come into existence until January 14, 2002, the commencement date obviously must be January 14, 2002.
[4] The LLCs also argued the Board is an adjudicatory agency to which the Fourth Amendment restrictions apply. However, because the LLCs did not raise this argument until their brief to this Court, this issue is not properly before us. Therefore, we pretermit any discussion of Fourth Amendment restrictions on the investigatory powers of adjudicatory agencies, and we will treat the Board as an investigatory administrative agency for the purpose of this opinion.
[5] The following discussion is in further completion of our discussion of due process in the context of investigatory agencies and is not intended as an attempt to address due process in the context of adjudicatory agency, an issue which the LLCs first raised in this court and which is not properly before us. See, supra note 4.