# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-0686


**JOSEPH LEVIN SAVOY**

**VERSUS**

**BAYOU PLAQUEMINE & WICKOFF
GRAVITY DRAINAGE DISTRICT**


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2008-11054-F
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Jimmie C. Peters, Marc T. Amy, and Michael G. Sullivan, Judges.


**AFFIRMED.**

**Malcolm Brasseaux**
**Attorney at Law**
**202 West Plaquemine Street**
**Church Point, LA 70525**
**(337) 684-3355**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Joseph Levin Savoy**

**Nicholas Bellard**
**Bellard Law Offices, L.L.C.**
**P. O. Box 70**
**Church Point, LA 70525**
**(337) 684-0293**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Bayou Plaquemine & Wickoff Gravity Drainage District**

PETERS, J.

The Bayou Plaquemine and Wickoff Gravity Drainage District, a political subdivision of the Acadia Parish Police Jury, appeals the trial court's grant of a permanent injunction prohibiting it from digging a ditch on seventy-six acres of Acadia Parish immovable property. For the reasons that follow, we affirm the trial court's judgment in all respects.

## FACTS AND PROCEDURAL HISTORY

Joseph Levin Savoy is the lessee of the seventy-six acres involved in this litigation, having farmed rice and crawfish on the property since the early 1990's. When he first began farming the property, it was encumbered by a ditch (hereinafter referred to as the "ricefield ditch") which ran through the property. In 1994 he filled in the ditch and built a field road on top of the filled-in area.

This litigation arises because, in the fall of 2008, the Bayou Plaquemine and Wickoff Gravity Drainage District (hereinafter referred to as the "Drainage District") began digging a drainage ditch on land adjacent to Mr. Savoy's leased property with the clear intention of excavating the ricefield ditch and extending the drainage ditch across the leased property. On October 10, 2008, Mr. Savoy filed a petition seeking a temporary and a permanent injunction to prohibit the Drainage District from constructing the ditch.[1]

At the conclusion of an October 27, 2008 hearing, the Drainage District stipulated that it would place the proposed ditch on the leased property at a point parallel to the field road constructed by Mr. Savoy, and, based on that stipulation, the trial court concluded that "no irreparable harm could occur as a result of the

---

[1]Mr. Savoy's petition also named the Acadia Parish Police Jury (the Police Jury) as a defendant. However, the Police Jury was subsequently dismissed as a party defendant and the only defendant remaining in the litigation is the Drainage District.

continued operations on the property should the Drainage Board continue to act."

Given that conclusion, the trial court denied Mr. Savoy's request for a temporary injunction. However, after a March 30, 2009 hearing,[2] the trial court rendered judgment granting Mr. Savoy relief and "forever enjoining, restraining and prohibiting the [Drainage District] from channeling water upon the property which was the subject of this suit and/or digging ditches or taking other action to effectuate same, absent other legal action being taken in the future." Thereafter, the Drainage District perfected this appeal.

## OPINION

### *Standard of Review*

"An appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction." La.Code Civ.P. art. 3612(B). In *Mary Moe, L.L.C. v. Louisiana Board of Ethics*, 03-2220, p. 9 (La. 4/14/04), 875 So.2d 22, 29 (citations omitted), our supreme court set forth the standard of review applicable to the issuance of a permanent injunction:

> The standard of review for the issuance of a permanent injunction is the manifest error standard. The issuance of a permanent injunction takes place only after a trial on the merits in which the burden of proof is a preponderance of the evidence, but a preliminary injunction may be issued on merely a *prima facie* showing by the plaintiff that he is entitled to relief.

Thus, we review the trial court's decision to grant the permanent injunction for manifest error. However, if the trial court committed an error of law, we review the entire record *de novo*. *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742.

---

[2]The trial court took the permanent injunction question under advisement after the March 30 hearing, and on April 17, 2009, issued written reasons for judgment. It signed a judgment granting the permanent injunction on May 14, 2009.

## *Legal Issues*

Louisiana Revised Statutes 38:113 authorizes a drainage district to "preserve and maintain the efficiency of public drainage channels within its districts." *Terrebonne Parish Police Jury v. Matherne*, 405 So.2d 314, 317 (La.1981). Additionally, the statute grants a drainage district a legal servitude over the drainage channels within its district:

> The various levee and drainage districts shall have control over all public drainage channels or outfall canals within the limits of their districts which are selected by the district, and for a space of one hundred feet on both sides of the banks of such channels or outfall canals, and one hundred feet continuing outward from the mouth of such channels or outfall canals, whether the drainage channels or outfall canals have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels or outfall canals, and may adopt rules and regulations for preserving the efficiency of the drainage channels or outfall canals.

However, this court has held that before a drainage district can exercise the statutory legal servitude, it must meet three prerequisites:

> First, the drainage channel must have been either previously improved by the drainage district or *adopted* without prior improvement as a necessary part of or extension to improved drainage channels. Second, the drainage channel must be a public channel. Third, the channel must be selected by the drainage district and recommended and approved by the Office of Public Works.

*Whipp v. Bayou Plaquemine Brule Drainage Bd.*, 476 So.2d 1042, 1044-45 (La.App. 3d Cir. 1985).

In its reasons for judgment in this matter, the trial court concluded that the Drainage District failed to establish the first prerequisite, stating that "[t]he Drainage Board has failed to establish the ditch or canal was ever legally adopted. While the canal may have been utilized and maintained in the past, there was no right of way obtained nor expropriation of the property by the Drainage Board."

3

We find no manifest error in that finding of fact. In fact, the record contains no evidence of how or why the original ditch came into being. Merlin Young, who served as a member of the Board of Directors of the Drainage District from 1984 to 1994, testified that he could not recall the Drainage District performing any work on the ricefield ditch. In fact, the only evidence of the ricefield ditch's origin is in an eight-page letter to the trial court from Charles T. Mader[3] of Mader Engineering, Inc. In that letter, Mr. Mader stated that "[t]he 'Rice Field Ditch' was originally constructed in the early 1960's" but "[i]t is not clear as to what reasoning or events led to the original construction of the ditch, and the original ditch's exact limits are also unclear." Mr. Mader did make it clear in his letter that he made no investigation concerning the existence or non-existence of a servitude to any entity, concluding that investigation was outside his mandate from the trial court.

The Drainage District asserts that, notwithstanding the lack of proof on the origins of the ditch, the trial court misinterpreted La.R.S. 38:113. The Drainage District asserts that the statute establishes "two mutually exclusive standards . . . for the finding of a legal servitude." That is to say, there is one standard for ditches or canals maintained by a drainage district and another for unimproved canals or ditches. The Drainage District contends that under the first standard a drainage district acquires a legal servitude over a canal or ditch by virtue of its actions in improving the ditch or canal, with no need for the drainage district to adopt the ditch or canal as a necessary extension to the drainage system; while under the second standard, which deals with canals or ditches that the drainage district has not improved, the drainage

_____

[3]At the conclusion of the hearing on the preliminary injunction, the trial court appointed Mr. Mader, a Lafayette, Louisiana civil engineer, to examine the elevations of the property at issue and to determine the natural flow of water thereon. The letter was placed in evidence as satisfaction of that appointment.

4

district must adopt the canal or ditch as a necessary extension to the drainage system. Here, the Drainage District asserts a legal servitude based on the first standard.

Under the Drainage District's interpretation of the statute, if "the canal has previously been improved by the Drainage District," then a legal servitude exists over the drainage canal. The Drainage District argues that because the ricefield ditch had been maintained by the Drainage District for decades before it was filled in, it had a legal servitude over the area where the ditch used to be. However, this argument ignores the fact that, as previously noted, the record contains no evidence the Drainage District ever incurred any expenses or performed any work in association with maintaining the ricefield ditch.

Even considering that evidence might exist to establish some activity by the Drainage District in association with its interpretation of La.R.S. 38:113, we disagree with its interpretation of the statute. To accept the Drainage District's interpretation would be to ignore the language in *Whipp*, 476 So.2d at 1046, to the effect that "[o]nce the canal . . . has been adopted by the drainage district as a part of or an extension to an improved drainage channel, there exists a legal servitude to preserve and maintain the canal. However, *it is imperative that the canal first be adopted*." (Emphasis added.)

### DISPOSITION

For the foregoing reasons, we affirm the trial court judgment in all respects. We assess all costs of this appeal to the defendant, Bayou Plaquemine and Wickoff Gravity Drainage District. Pursuant to La.R.S. 13:5112(A), we set those costs at $490.46.

**AFFIRMED.**

5