# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-237

STATE OF LOUISIANA BY AND THROUGH
THE LOUISIANA OFFICE OF CONSERVATION

VERSUS

JESSE NELSON BALL, IV

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 84,607, DIV. A
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Billy Howard Ezell, Judges.

AFFIRMED.

Walter L. Smith, III
Keith D. Jones
8480 Bluebonnet Blvd., Suite F
Baton Rouge, LA 70810
(225) 763-6900
COUNSEL FOR DEFENDANT/APPELLANT:
    Jesse Nelson Ball, IV

**James D. "Buddy" Caldwell**
**Attorney General**
**Ryan M. Seidemann**
**Assistant Attorney General**
**Civil Division/Lands & Natural Resources**
**P. O. Box 94005**
**Baton Rouge, LA 70804-9005**
**(225) 326-6085**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**
    **Louisiana Office of Conservation**

**James H. Welsh**
**Commissioner of Conservation**
**J. Blake Canfield**
**State of Louisiana, Office of Conservation**
**P. O. Box 94275**
**Baton Rouge, LA 70804**
**(225) 342-3024**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**
    **Louisiana Office of Conservation**

**PETERS, J.**

The defendant, Jesse Nelson Ball, IV, appeals from a trial court judgment finding him in contempt for failing to comply with a subpoena issued by the State of Louisiana, through the Louisiana Office of Conservation (state). For the following reasons, we affirm.

## DISSCUSSION OF THE RECORD

This litigation arises from an attempt by Mr. Ball to be paid for information he claims to have gathered relating to safety concerns with a Louisiana gas pipeline known as the Haynesville Extension Pipeline (pipeline). The record before us is rather sparse, and the information before us is provided by the assertions found in the state's petition, by the trial court's summation of discussions with counsel in chambers, from letters written by Mr. Ball and introduced in evidence, and from the state's petition.

Acadian Gas Pipeline (Acadian) constructed the approximately 240-mile pipeline. Construction began in February 2011, and ended shortly before August 2011. Acadian planned to purge the pipeline with nitrogen by September 6, 2011, and to have natural gas flowing through the pipeline by October 1, 2011.

On April 18, 2011, Mr. Ball forwarded a letter to Enterprise Products Operating, L.L.C. (Enterprise) stating that he had "developed conclusive photographic and other evidence, all of which is independently verifiable, that through negligence, one of your billion dollar plus capital investments and the public safety have been placed at significant risk." Without providing specifics, Mr. Ball informed Enterprise that he was aware of defects in the pipeline, which information he would provide to Enterprise for a price. Upon being made aware of

Mr. Ball's assertions, Acadian[1] contacted the Louisiana Office of Conversation on May 9, 2011, and informed it of the particulars of Mr. Ball's allegations and demand for money.

Based on the information provided him by Acadian, James H. Welsh, the Commissioner of Conservation, wrote Mr. Ball on May 10, 2011, stating:

> I appreciate your concerns and request that you submit any and all information and evidence related to this matter that you possess to the Office of Conversation so that it may be reviewed to determine if any violations of Office of Conservation's pipeline safety regulations have occurred. Please submit any and all evidence or information to this Office by May 27, 2011 and be aware that failure to provide this office with any and all evidence in your possession concerning public safety and the subject pipeline by that date, will lead the Office of Conservation to undertake additional steps in order to obtain this evidence and to protect the public welfare.

In response, Mr. Ball, by May 25, 2011 letter, requested that Commissioner Walsh:

> [R]ecognize [that this matter] is currently a financial issue between Enterprise and myself. It is my firm belief that the citizens of this state will benefit greatly from my efforts and sharing of this information, but it is not my intent that those who may have failed in their responsibilities do the same without fair compensation. Since at this time it has only financial implications to Enterprise in its non-operational mode and poses no threat to public safety, this information should be provided to you only through Enterprise.
>
> I look forward to maintaining an open and healthy dialogue with you to bring this matter to a speedy resolution.

As a result of Mr. Ball's refusal to provide the requested information, Commissioner Walsh issued the following subpoena duces tecum to Mr. Ball:

> You are hereby commanded by the Commissioner of Conservation, pursuant to La. R.S. 30:8, to provide to the Commissioner of Conservation, for receipt by the Office of Conservation, Pipeline Division, located at 617 N. Third Street, 11th Floor, Baton Rouge, Louisiana 70802, by facsimile, by U.S. Mail, or by hand delivery, no

---

[1] Court documents do not specify the connection between Acadian and Enterprise. Mr. Ball's May 25, 2011 letter to the Commissioner identifies Acadian as a jointly-owned subsidiary of Enterprise and Duncan Energy Partners, L.P.

2

later than ten (10) days after your receipt of this subpoena, the following:

1. Any and documents, including but not limited to, records, written narratives, papers, correspondence, photographs, video recordings, files or other documents or records, whether in hard copy or electronic format, that relate to the alleged deficiencies or any other unsafe practices in the construction of the Haynesville Extension as stated in your letters, dated May 18, 2011 and May 25, 2011, and attached to this subpoena as Exhibits 1 and 2 respectively;

2. Any and all documents, including but not limited to, records, written narratives, papers, correspondence, photographs, video recordings, audio recordings, files or other documents or records, whether in hard copy or electronic format, that relate to your visual surveillance process or any other activities that led to your conclusions regarding the alleged deficiencies or any other unsafe construction practices associated with Acadian Gas Pipeline System and the Haynesville Pipeline Extension in the attached Exhibits 1 and 2.

Fail not to produce as herein directed under penalty of law.

**BY ORDER OF THE COMMISSIONER OF CONSERVATION**
this 7th day of July 2011.

The service information shows that the subpoena was personally served on Mr. Ball by a Natchitoches Parish sheriff's deputy on July 12, 2011. The deadline to comply with the subpoena was extended to August 2, 2011, by Commissioner Welsh at Mr. Ball's request.

On August 3, 2011, counsel for Mr. Ball faxed a letter to J. Blake Canfield, the Senior Attorney of the Office of Conservation, stating in part:

As you know, your office has issued a *Subpoena Duces Tecum* to Mr. Ball to produce documents and photographs regarding the Haynesville Extension which Mr. Ball has generated though investment of his own individual effort, time and money. Obviously, your Department has the responsibility to insure the safety of the pipeline in question and we stand ready to assist you in that regard and provide that information voluntarily, with several conditions.

As you know, there will be no safety issue unless the pipeline is put into service. Please consider this our written agreement to

3

produce the information voluntarily no later than one week prior to the scheduled opening of the pipeline. Additionally, at that time, Mr. Ball will be willing to meet with your staff and provide all information at his disposal to assist in your analysis. Anyone with pipeline expertise should be able to determine in minutes whether a safety problem exists and your department will have more than adequate time to analyze the situation and prevent opening the pipeline, if warranted.

Unquestionably, Mr. Ball is entitled to be compensated for his efforts in discovering information which may reveal the existence of a safety problem. Mr. Ball would simply like additional time to approach Enterprise and the contractor Willbros and convince them that this information is extremely valuable. If a safety problem exists and prevents opening this pipeline, Enterprise and Willbros will lose millions of dollars and every day they are able to work towards remediation will save much money. If Enterprise is able to open the pipeline three weeks sooner because of Mr. Ball's information and efforts, it will save millions of dollars.

If you have questions or problems, need additional information or would like to discuss this matter further, please contact me. I trust that you will agree that this is a reasonable compromise and will protect everyone's interest, and most importantly will prevent any safety hazards from ever occurring.

Thereafter, on August 4, 2011, counsel for Mr. Ball faxed a letter to Mr. Canfield, Enterprise, and Willbros, Inc.,[2] which stated:

You will find attached hereto two color photographs which Mr. Ball has been required to produce to the Louisiana Department of Natural Resources (DNR) pursuant to a Subpoena Duces Tecum. These pictures inform Enterprise, Willbros and the Department of Natural Resources of the nature of the problem that exists with the Haynesville Extension. Obviously, the scope and extent of the problem is yet to be determined.

It would certainly appear that remediation will be required and the pipeline will not be approved for operation, as scheduled, until complete remediation is accomplished. The problems that exist with this pipeline are a result of numerous entities and parties failing to exercise due diligence in the completion of their obligations. It should also be obvious that each day the operation of this pipeline is delayed will result in a significant negative financial impact on all parties involved.

It would appear that Enterprise has attempted to employ the

---

[2] Willbros, Inc. is identified by the state in a trial court memorandum as the party constructing the pipeline for Enterprise/Acadian.

4

services of the DNR to secure information from Mr. Ball, at no expense to Enterprise. Although we have copied DNR, we intend to withhold any information until Mr. Ball is fairly compensated for his efforts.

While we expect to be successful in quashing the Subpoena Duces Tecum issued by DNR, if and when it is necessary for Mr. Ball to release all his information, it will be released to the DNR and to all interested parties, including CNN, CBS, 60 Minutes, and the New York Times.[3] The pipeline safety issue would be of particular interest to adjacent and nearby landowners.

It is unquestionably in the best interest of Enterprise and Willbros to determine the scope and extent of the existing problem and begin remediation as soon as possible. Mr. Ball has information to assist in that regard, provided he is compensated a fair amount for doing a job others failed to do.

Time is of the essence. Mr. Ball attempted to negotiate a reasonable compensation for revealing this information in April of 2011 and had Enterprise acted at that time, it no doubt would have saved many millions of dollars. Enterprise's continued refusal to respond for the next three weeks will result in the loss of millions more. We suspect the officers and stockholders of your respective companies will react if they are informed that inaction by several people on several occasions caused losses such as these.

If you would like to arrange a meeting to negotiate an agreement to fairly compensate Mr. Ball in exchange for release of information, please contact us.

The two photographs were of "keymay" bags which, according to the state, are weighted bags used to anchor pipelines in place. Mr. Ball provided some further information to the Office of Conservation staff on August 12, 2011, but informed them that he would not provide them with all of the information he possessed.

On August 16, 2011, the state filed a petition for writ of attachment, seeking to have Mr. Ball arrested and brought before the trial court for a hearing on whether he was in contempt for failing to comply with Commissioner Welsh's

---

[3] In a footnote, counsel for Mr. Ball stated, "Because of recent circumstances, Mr. Jones has developed a working relationship with reporters from these and other news outlets." Keith D. Jones is one of the two attorneys representing Mr. Ball.

subpoena duces tecum. Mr. Ball answered this petition and sought a continuance of the contempt hearing so that he might conduct discovery.

A September 13, 2011 hearing resulted in the trial court ruling that Mr. Ball's presence at the hearing rendered the writ of attachment moot; that all of the locational data possessed by Mr. Ball was relevant and material to the Office of Conservation's investigation into potential safety hazards; that the Office of Conservation's subpoena was valid; that Mr. Ball was required to comply with the subpoena; that he had not complied with the subpoena; and that he was in contempt for failing to do so. The trial court allowed Mr. Ball an additional fifteen days from the date the judgment was signed to comply with the subpoena; if he failed to timely comply, he was to serve five days in the parish jail. The trial court further concluded that its judgment on the merits rendered moot both protective order requests and Mr. Ball's request for a continuance to conduct discovery. The trial court executed a written judgment and Mr. Ball perfected this suspensive appeal.

On appeal, Mr. Ball raises four assignments of error:

1. The court's decision fails to require the state to show a specific reasonable basis, legitimate governmental interest, or compelling governmental interest justifying its actions.

2. The trial court's denial of Ball's motion for protective order and motion for continuance to conduct discovery is reversible error as such prevents Ball from having opportunity to prove his constitutional rights have been violated and that the state has no reasonable or compelling interest to violate such rights.

3. The judgment also results in a violation of Ball's rights to due process and equal protection of the laws.

4. The trial court failed to require the state to show its continual inquiry was still pertinent to [its] claimed purpose for issuance of the subpoena.

6

**OPINION**

The Office of Conservation, under the direction of the Commissioner of Conservation, has jurisdiction over all natural resources not covered by other state departments or agencies. La.R.S. 30:1(C). It has the "jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of this Chapter and all other laws relating to the conservation of oil or gas." La.R.S. 30:4(A). Louisiana Revised Statutes 30:2 provides, "Waste of oil and gas as defined in this chapter is prohibited." Furthermore, in the performance of his duties:

> The commissioner shall make such inquiries as he thinks proper to determine whether or not waste, over which he has jurisdiction, exists or is imminent. In the exercise of this power the commissioner has the authority to collect data; *to make investigations and inspections*; to examine properties, leases, papers, books, and records; *to examine, survey, check, test, and gauge oil and gas wells, tanks, refineries, and modes of transportation*; to hold hearings; to provide for the keeping of records and the making of reports; to require the submission of an emergency phone number by which the operator may be contacted in case of an emergency; and *to take any action as reasonably appears to him to be necessary to enforce this Chapter*.

La.R.S. 30:4(B) (emphasis added).

Louisiana Revised Statutes 30:4 further provides the Assistant Secretary of the Department of Natural Resources and the Commissioner of Conservation with jurisdiction over pipelines constructed on state water bottoms and over all other pipelines constructed in the State of Louisiana, respectively:

> D. The assistant secretary shall make, after notice and public hearing as provided in this Chapter, any reasonable rules, regulations, and orders that are necessary:

> (1) To require that all pipelines, excluding field transmission, flow, and gathering lines; all wells; and associated structures, including any fittings, tie-overs, appliances, and equipment, which are constructed on state water bottoms pursuant to the grant of a right-of-way by the secretary of the Department of Natural Resources or the issuance of a lease by the State Mineral and Energy Board shall conform to the following provisions:

(a) The owner or operator of a pipeline constructed on a right-of-way granted on state water bottoms shall be responsible for burying the line to a depth consistent with regulations promulgated by the office of conservation and for maintaining it at said depth to the extent feasible and practical, as determined by the assistant secretary, taking into account the changes wrought by natural forces.

. . . .

E. The commissioner shall make, after notice and public hearing as provided in this Chapter, any reasonable rules, regulations, and orders that are necessary to require that all other pipelines not covered by Subsection D of this Section, together with any fittings, tie-overs, appliances, and equipment, which are constructed in this state shall be buried, maintained, or removed from the right-of-way or lease according to the following provisions:

(1) Pipelines in active use and those not in active use but whose owner anticipates reuse shall be buried to a depth consistent with regulations promulgated by the office of conservation and shall be maintained during the course of the useful and active life of the lines at a depth determined by the commissioner to be substantially equivalent to the original depth of burial. The commissioner may by rule grant such exceptions or variances from this provision as may be necessary for pipelines buried under navigable streams or water bottoms as provided for in Subsection D of this Section.

In accordance with its powers of regulation, the Commissioner is statutorily granted the power to issue subpoenas over witnesses and records concerning any matter pertaining to its jurisdiction. La.R.S. 30:8. To that extent:

No person shall be excused from attending and testifying or producing books, papers, or records, or from obeying the subpoena of the commissioner or of a court of record on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to penalty or forfeiture.

La.R.S. 30:8(A)(2).

The statute further provides:

In the case of a failure or refusal to comply with a subpoena issued by the commissioner, or in the case of the refusal of a witness to testify or answer as to a matter regarding which he may be lawfully interrogated, any district court on the application of the commissioner may, in term time or in vacation, issue an attachment for the person to compel him to comply with the subpoena and to attend before the

8

commissioner with the desired documents and to give his testimony upon whatever matters are lawfully required.

The court may punish for contempt those disobeying its orders as in the case of disobedience of a subpoena issued by the court or refusal to testify therein.

The Commissioner's subpoena power is reiterated in the Louisiana Administrative Procedure Act, La.R.S. 49:956(5)(c), which provides in pertinent part:

Whenever any person summoned under this Section neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the agency may apply to the judge of the district court for the district within which the person so summoned resides or is found, for an attachment against him as for a contempt. It shall be the duty of the judge to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him, to proceed to a hearing of the case; and upon such hearing, the judge shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

In *Mary Moe, L.L.C. v. Louisiana Board of Ethics*, 03-2220, pp. 11-12 (La. 4/14/04), 875 So.2d 22, 30 (citations omitted), the supreme court stated the following with regard to administrative agency subpoenas: (1) "An administrative agency's power to issue investigative subpoenas depends upon legislative authorization in a particular enabling statute"; (2) "the evidence sought by the subpoena must be reasonably relevant and material to the investigation's lawfully authorized purpose"; and (3) "the subpoena must be sufficiently limited in scope and specific in directive so that compliance will not be unreasonable, overbroad, or unduly burdensome." Following the supreme court's guidance, the first circuit, in *Louisiana State Board of Nursing v. Gautreaux*, 09-1758, pp. 9-10 (La.App. 3 Cir. 6/11/10), 39 So.3d 806, 814, *writ denied*, 10-1957 (La. 11/5/10), 50 So.3d 806, stated the following concerning an administrative agency subpoena:

Generally speaking, a subpoena issued by an administrative agency is valid, must be obeyed, and will be upheld and enforced by the courts so long as the investigation is for a lawfully authorized purpose within the power of the legislature to command, the information sought is relevant and material to the investigation, and the conditions under which production of records is ordered are not unreasonable. *Mary Moe, L.L.C. v. Louisiana Board of Ethics*, 2003-2220, pp. 10-11 (La.4/14/04), 875 So.2d 22, 30; *Francis v. Accardo*, 602 So.2d 1066, 1068-69 (La.App. 1 Cir.1992). *See also* LSA-C.C.P. art. 1354(A).

At the beginning of the September 13, 2011 hearing, the trial court summarized the issue before it as relating primarily to issues of safety in areas where the pipeline was crossing wet areas. The trial court suggested that in such situations, a gas pipeline will have a tendency to float and that industry standards required that weighted bags be placed over those wet areas to prevent the pipeline from floating. It suggested that were a pipeline to be allowed to float freely, the movement might well cause dislocation of the pipe seams which could lead to ruptures creating issues of public safety.

Specifically, in this case, the trial court noted that Mr. Ball provided the state with some, but not all of the information he had in his possession. The state's position was that it needed all information available to Mr. Ball concerning the potential safety hazards he claims to have observed in order that the state might make a complete investigation. The trial court recognized the state's statutory subpoena authority in this matter and concluded that the primary issue before the court was to determine whether or not Mr. Ball complied with the subpoena issued to him.

At the close of argument, the trial court rendered the following reasons for judgment:

Okay. Well, I read all the pleadings before court, and had a lengthy visit with counsel in chambers, where they did an excellent job of presenting their positions in chambers as they did in court today in helping me to understand the issues here. The defendant in the

10

case, Mr. Ball, approached the State and said, "I have information as to what I believe are safety hazards involving this pipeline." But . . . and his position today is, but because that information is worth something to me, and I want to try frankly to make money off of it, I don't want to give it to you. The Conservation Commission has been presented therefore, with information that there may be safety hazards concerning this particular pipeline. The statutory duty of the Commission, as I understand it, when it's faced with reasonable allegations is to investigate those. It seems to me that information as to all the locations that Mr. Ball has, that . . . where there may be safety hazards are relevant and material to the investigation to the Commission. And because I think that the information is relevant and material to the investigation of potential safety hazards to the investigation of potential safety hazards, it outweighs his concern of not wanting to share it without being compensated for it. Therefore, it is my opinion that the subpoena is valid.

Considering that the Commissioner is tasked with the regulation of pipelines, including the assurance that a pipeline will remain buried at a specified depth, the trial court correctly held that any information pertaining to incorrectly-filled keymay bags was relevant and material to the Commissioner's investigation of possible safety hazards emanating from the pipeline, as predicted by Mr. Ball. We further find that compliance, as ordered by the subpoena, would not be unreasonable, overbroad, or unduly burdensome for Mr. Ball since this is the same information he offered to tender to Enterprise after being paid his asking price.

Based on the foregoing, we find that the trial court correctly held that the Commissioner's subpoena was valid, that Mr. Ball failed to comply with the subpoena, and that should he fail to comply within the fifteen-day period provided, he would be found in contempt. [4] We find Mr. Ball's position to be unseemly and bordering on extortion. It is unthinkable that Mr. Ball would place a price tag on information in his possession that if shared, might prevent the loss of human life, the waste of valuable natural resources, and significant property damage.

---

[4] Pursuant to La.R.S. 13:4611(1)(c), the trial court could have ordered Mr. Ball imprisoned until he complied with the Commissioner's subpoena.

11

*Remaining Assignments of Error*

We further find no merit in Mr. Ball's three remaining assignments of error. First, we find no error in the trial court's denial of Mr. Ball's motion for a continuance so he could conduct discovery. Pursuant to its authority, the Commissioner has the authority to investigate and issue subpoenas over any matter within its jurisdiction, including the regulation and safety of pipelines. La.R.S. 30:4; La.R.S. 30:8. It is difficult to envision exactly what Mr. Ball's discovery might entail since he is the individual claiming to have the critical information. It seems more reasonable to conclude that his motion for a continuance was nothing more than a stalling tactic designed to allow him more time to effect a monetary settlement.

Next, Mr. Ball argues that the state's actions violated his constitutional right to due process, equal protection, and freedom from governmental seizure of property without compensation. In support of this assignment, Mr. Ball states, "Without discovery and a hearing, Nelson Ball will be prevented from proving these violations and, further, denial of remand for hearing would cause violations of equal protection and due process." This represents the totality of Mr. Ball's argument. Rule 2-12.4, of the Uniform Rules of the Courts of Appeal, provides that "[a]ll specifications or assignments of error must be briefed. The court may consider as abandoned any specifications or assignment of error which has not been briefed." We find that Mr. Ball's argument on this issue does not pass muster. Rather than providing Mr. Ball's argument, we will consider this assignment of error as abandoned.

Finally, Mr. Ball argues that because his constitutional rights were violated, the state's actions must withstand a strict-scrutiny test before being allowed to

stand. However, based on the finding that Mr. Ball abandoned his previous assignment of error, we find that this assignment of error is rendered moot.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment in all respects. We assess all costs of this appeal to Jesse Nelson Ball, IV.

**AFFIRMED.**